WYLAIN, INC., Plaintiff,

And

State of Delaware, Intervenor Plaintiff,

v.

TRE CORPORATION and Trelain Corporation, Defendants.

Civ. A. No. 6039 (1979).

Court of Chancery of Delaware, New Castle County.

Submitted Dec. 6, 1979.

Decided Dec. 14, 1979.

Revised Jan. 31, 1980.

Charles S. Crompton, Jr. and Michael D. Goldman, of Potter, Anderson & Corroon, Wilmington, for plaintiffs.

Don C. Brown, of Dept. of Justice, Wilmington, for intervenor plaintiff.

A. Gilchrist Sparks, III, and Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants.

HARTNETT, Vice Chancellor.

Plaintiff-Wylain, Inc. ("Wylain") seeks a preliminary injunction prohibiting defendants-TRE Corporation ("TRE") and Trelain Corporation ("Trelain") from consummating or taking any further action in connection with a cash tender offer made by the defendants for the outstanding shares of common stock of Wylain. It is undisputed that the defendants, in making the tender offer, did not comply with the Delaware Tender Offer Act—8 *Del.C.* § 203. The only real issue is whether the Delaware Tender Offer Act is unconstitutional as being in violation of the Commerce Clause of the U. S. Constitution (Art. I, § 8) or whether it is preempted by the Federal Williams Act, 15 *U.S.C.* §§ 78m(d)–(e), 78n(d)–(f) and therefore conflicts with the Supremacy Clause of the U. S. Constitution (Art. VI, ¶ 2). For the reasons discussed, I find that the Delaware Tender Offer Act is not void on its face under either the Commerce or Supremacy Clause of the U. S. Constitution, and that its constitutionality would probably be up-

held at a hearing for a permanent injunction. I also find that Wylain has established the criteria necessary for the issuance of a preliminary injunction.

I

THE FACTS

The facts are, for the most part, undisputed. TRE caused Trelain to be incorporated in this State on November 23, 1979, apparently for the purpose of acquiring the outstanding securities of Wylain. On the following Monday—November 26, 1979—TRE delivered to Wylain documents notifying it of a proposed cash tender offer for all of the outstanding securities of Wylain, of the filing with the Federal Trade Commission and the United States Justice Department of certain documents in connection therewith, required by the Hart-Scott-Rodino Antitrust Improvements Act (15 *U.S.C.* § 18a), and of the pendency of an action for injunctive relief filed by TRE and Trelain in the United States District Court for the Northern District of Texas attacking the Delaware Tender Offer Act (8 *Del.C.* § 203) on constitutional grounds.[1] The U. S. District Court initially entered a temporary

---

1. 8 *Del.C.* § 203 states:

§ 203 TENDER OFFERS.

(a) No offeror shall make a tender offer unless:

(1) Not less than 20 nor more than 60 days before the date the tender offer is to be made, the offeror shall deliver to the corporation whose equity securities are to be subject to the tender offer, at its registered office in this State or at its principal place of business, a written statement of the offeror's intention to make the tender offer. The statement shall include the name and address of the offeror and of each director and principal officer of the offeror; a description of the equity securities to be purchased and the consideration to be offered; the duration of the offer; the date on which the offeror may first purchase tendered securities; the amount or number of equity securities to be purchased or the manner in which such number or amount will be determined; whether the offeror will unconditionally accept all or any part of the equity securities tendered and, if not, upon what conditions acceptance will be made; the number or amount of any equity securities of the corporation owned beneficially by the offeror and any associate of the offeror as of the date of the delivery of the statement; a description of any contract, agreement or

understanding to which the offeror or any associate of the offeror is a party with respect to the ownership, voting rights or any other interest in any equity security of the corporation; and, if the offeror permits the purchase of less than all the outstanding equity securities issued by the corporation, copies of a balance sheet of the offeror as of the end of its last fiscal year and of its income statements for the 3 fiscal years preceding the offer;

(2) The tender offer shall remain open for a period of at least 20 days after it is first made to the holders of the equity securities, during which period any stockholder may withdraw any of the equity securities tendered to the offeror, and any revised or amended tender offer which changes the amount or type of consideration offered or the number of equity securities for which the offer is made shall remain open for an additional period of at least 10 days following the amendment; and

(3) The offeror and any associate of the offeror will not purchase or pay for any tendered equity security for a period of at least 20 days after the tender offer is first made to the holders of the equity securities, and no such purchase or payment shall be made

restraining order prohibiting Wylain from attempting to require the defendants to comply with the Delaware Tender Offer Act. On appeal, the restraining order was stayed pending a full hearing on a preliminary injunction also requested by TRE.

The hearing on that preliminary injunction has not yet been held. Wylain then commenced this action in this Court and this is my decision on Wylain's application for a preliminary injunction enjoining defendants from proceeding with their tender offer

within 10 days after an amended or revised tender offer if the amendment or revision changes the amount or type of consideration offered or the number of equity securities for which the offer is made. If during the period the tender offer must remain open pursuant to this section, a greater number of equity securities is tendered than the offeror is bound or willing to purchase, the equity securities shall be purchased pro rata, as nearly as may be, according to the number of shares tendered during such period by each equity security holder.

(b) Notwithstanding the foregoing:

(1) Whenever an offeror has delivered the statement required by paragraph (1) of subsection (a) of this section, a subsequent offeror who shall also deliver the statement required by paragraph (1) of subsection (a) of this section may thereafter make a tender offer for equity securities of the same class as in the original offer at or after the date this section permits the original offeror to make an offer;

(2) If the original offeror has made a tender offer in compliance with this section, the date upon which a subsequent offer for equity securities of the same class may close and the offeror purchase or pay for equity securities tendered thereunder may be the same as provided in the original offer at the date the subsequent offer is made.

(c) As used in this section, the term:

(1) "Offeror" means any person, corporation, partnership, unincorporated association or other entity who makes a tender offer, and includes any 2 or more of the same who make a tender offer jointly or intend to exercise jointly or in concert any voting rights of the equity securities for which the tender offer is made;

(2) "Tender offer" means any offer to purchase or invitation to tender equity securities for purchase made by an offeror to more than 30 of the holders of equity securities of any corporation organized under this chapter if, after the consummation thereof, the offeror and any associate of the offeror would own beneficially, directly or indirectly, more than 5 percent of any class of the outstanding equity securities of the corporation, unless the offer is exempted by any other provision of this section;

(3) "Tender offer" does not mean:

a. An offer made by a corporation to purchase its own equity securities or equity securities of another corporation, if a majority of the shares entitled to vote in the election of directors of such corporation is held directly or indirectly by the offering corporation;

b. An offer to purchase equity securities to be effected by a registered broker-dealer on a stock exchange or in the over-the-counter market if the broker performs only the customary broker's function, and receives no more than the customary broker's commissions, and neither the principal nor the broker solicits or arranges for the solicitation of orders to sell such equity securities;

(4) A tender offer is "made" when it is first published or sent or given to the holders of the equity securities;

(5) "Equity security" means any stock, bond or other obligation the holder of which has the right to vote, or any security convertible into, or any right, option or warrant to purchase any such stock, bond or other obligation;

(6) "Associate of the offeror" means:

a. Any corporation or other organization of which the offeror is an officer, director or partner, or is, directly or indirectly, the beneficial owner of 10% or more of any class of equity securities;

b. Any person who is an officer, director, partner or managing agent of an offeror, or who is, directly or indirectly, the beneficial owner of 10% or more of any class of equity securities of the offeror;

c. Any trust or other estate in which the offeror has a substantial beneficial interest or as to which the offeror serves as trustee or in a similar fiduciary capacity; or

d. The spouse of the offeror, or any relative of the offeror or of such spouse who has the same home as the offeror.

(d) The certificate of incorporation of any corporation organized under this chapter may provide that tender offers for the purchase of its equity securities shall not be subject to this section.

(e) The Court of Chancery is hereby vested with exclusive jurisdiction summarily to hear and determine alleged violations of this section. The Court may, in its discretion, award such relief as it may deem just and proper, including directing the corporation to refuse to transfer on its books and to refuse to recognize the vote with respect to any equity security acquired pursuant to a tender offer which does not comply with or is not exempt under this section. (60 Del.Laws, c. 371, § 1.)

until there has been compliance with the Delaware Tender Offer Act.

On December 6, 1979, defendants gave the notice to Wylain required by 8 *Del.C.* § 203 in order to be able to proceed with their tender offer in the event compliance with 8 *Del.C.* § 203 is required.

## II

### THE PRESUMPTION OF CONSTITUTIONALITY

 Although an application for preliminary injunctive relief is addressed to the sound discretion of the Court, *Nebeker v. Berg,* Del.Ch., 115 A. 310, 311 (1921), this Court has a duty to look primarily at two factors: the applicant's probability of success when the matter is considered at a final hearing, and his risk of sustaining irreparable injury in the event the requested relief is not granted. *Gimbel v. Signal Companies, Inc.,* Del.Ch., 316 A.2d 599, 602 (1974) and cases cited therein. The requirement of a showing of probability of success at a final hearing, the burden of which is on the applicant, applies to questions of law as well as to those of fact. *Gimbel v. Signal Companies, Inc.,* supra; *David J. Greene & Co. v. Schenley Indus., Inc.,* Del.Ch., 281 A.2d 30 (1971); *Gropper v. No. Cent. Tex. Oil Co.,* Del.Ch., 114 A.2d 231, 237 (1955); *Allied Chemical & Dye Corp. v. Steel & Tube Co.,* Del.Ch., 122 A. 142, 158 (1923); *Century Indus., Inc. v. Benoit,* Del.Ch., C.A. No. 5964 (Sept. 5, 1979). The question here, however, is purely a question of law since the defendants concede that they have not complied with 8 *Del.C.* § 203.

 An applicant has the burden of showing that he will be irreparably harmed in the event the extraordinary relief requested is not granted. *Bayard v. Martin,* Del.Supr., 101 A.2d 329, 334 (1953), *cert. denied,* 347 U.S. 944, 74 S.Ct. 639, 98 L.Ed. 1092 (1954). Additionally, if the one against whom injunctive relief is sought shows that he will suffer irreparable injury in the event an injunction is granted, the applicant has the burden of showing that his potential harm is greater than that of

his opponent. *Gimbel v. Signal Companies, Inc.,* supra.

Wylain therefore must show: (1) that, at a hearing for final injunctive relief, this Court will probably uphold 8 *Del.C.* § 203 as constitutional despite both the Commerce and Supremacy Clauses of the U. S. Constitution, (U.S.Const. art. I, § 8 and art. VI, ¶ 2, respectively); (2) that Wylain will be irreparably harmed and (3) since the defendants have alleged and shown that they will be harmed by the requested injunctive relief, the harm to Wylain or its stockholders will be greater than that to the defendants.

 Wylain's initial burden of persuasion is, however, limited to showing the existence of 8 *Del.C.* § 203 and the failure of defendants to comply with it. The burden of showing the unconstitutionality of 8 *Del.C.* § 203 is upon the defendants because of the presumption of constitutionality accorded Acts of the Delaware General Assembly. Wylain may rely on that presumption alone to prove the probability of its success on the merits and the burden therefore shifts to the defendants to rebut that presumption. *Philadelphia B. & W. R. Co. v. Mayor and Council of Wilmington,* Del. Ch., 57 A.2d 759, 765 (1948).

 The party asserting the unconstitutionality of an Act of the General Assembly must show that the question of the constitutionality of the attacked Act is fairly debatable. *Wilmington Med. Ctr., Inc. v. Bradford,* Del.Supr., 382 A.2d 1338, 1342 (1978); *Justice v. Gatchell,* Del.Supr., 325 A.2d 97, 102 (1974). Unless this hurdle is surmounted, this Court cannot consider arguments which contest the constitutionality of a statute.

 If a party is able to establish that the issue of constitutionality is fairly debatable he is confronted with another, more serious, obstacle in his path—he must, in order to overcome the presumption of constitutionality, establish clearly and convincingly the lack of constitutionality of the statute. *Justice v. Gatchell,* supra; *State Hwy. Dept. v. Del. P. & L. Co.,* 167 A.2d 27,

31 (1961). The defendants here, therefore, have the burden of rebutting the *prima facie* case established for Wylain by the presumption of constitutionality accorded Acts of the Delaware General Assembly. In order to successfully do so, defendants must show clearly and convincingly that the Delaware Tender Offer Act, 8 *Del.C.* § 203, contravenes the letter or spirit of the Commerce or Supremacy Clauses of the U. S. Constitution on the theory that the statute unduly burdens interstate commerce or that it has been preempted by the Williams Act, supra.

## III

## THE TEST OF CONSTITUTIONALITY UNDER THE COMMERCE CLAUSE

The Commerce Clause, U.S.Const. art. I, § 8, is an integral part of our system of federalism and is intended to promote the free flow of goods and services between and among the states of the federal union. The framers clearly perceived the evils attendant to allowing each state to govern commerce within its borders where that governance had an effect on commerce flowing between the states, and the parochial measures the states would create to promote internal production to the general detriment of interstate commerce. In order to protect the whole against the favoritism of the component states, the Constitution wisely allocated supreme power concerning interstate commerce to the federal government and not to the states themselves. The power to regulate intrastate commerce, where that regulation did not effect interstate commerce unduly, however, was left to the states. The role of the Courts in this field, therefore, has been to decide where state power ends and federal power begins. The tests used by the Courts to effect this demarcation have not always been consistent but, in an effort to clarify the area, the United States Supreme Court recently stated:

Where the [state] statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. [citation]. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178 (1970).

■ Defendants can therefore prevail by showing: (1) that there is a discrimination based on the state of origin or destination of the goods or services in commerce, or through which they flow; (2) that there is no legitimate local public purpose to be served by the statute; (3) that the burden on interstate commerce does not aid the legitimate local public purpose; or (4) that there is an equally effective but less restrictive means of aiding the legitimate local public purpose. Defendants have failed to show that they can prevail under any of these four criteria.

The defendants do not allege that the Delaware Tender Offer Act discriminates in favor of Delaware commerce to the detriment of interstate commerce. Rather, they urge only that there is no local public purpose to be served by the statute or, in the alternative, that the burden on interstate commerce is not related to any public purpose sought to be served by the statute and that, in any event, the burden on interstate commerce is excessive in relation to the goals sought to be served. I will discuss these contentions seriatim.

It is suggested that there are four interests which the State may have in regulating tender offers: (1) regulation of the internal affairs of corporations chartered by the State; (2) protection of the stockholders of these corporations; (3) preservation of local business; and (4) contribution of local business to the State community. Cf. Moylan, *State Regulation of Tender Offers*, 58

Marq.L.Rev. 687 (1975). The last two of these interests do not apply in this case because Wylain has no place of business or assets in Delaware. Of the other two interests, only the interests of the State of Delaware in the protection of the stockholders of Delaware corporations warrants extensive discussion. I will assume, without deciding, that the tender offer before the Court is not a matter involving intracorporate affairs, since this tender offer is a transaction between Wylain's stockholders and third parties, and not between Wylain and its stockholders, although, if a tender offer is an intracorporate matter, the chartering state has a legitimate interest in regulating it. See: Langevoort, *State Tender-Offer Legislation : Interests, Effects, and Political Competency*, 62 Cornell L.Rev. 213, 219–223 (1977); Shipman, *Some Thoughts About the Role of State Takeover Legislation : The Ohio Takeover Act*, 21 Case W.Res.L.Rev. 722, 744–745 (1970); Note, *The Constitutionality of State Takeover Statutes : A Response to Great Western*, 53 N.Y.U.L.Rev. 872, 931–934 (1978).

Regardless of the characterization of a tender offer as an intracorporate affair or as a transaction wholly between the stockholders and a third party, the state in which a corporation is chartered has as one of its primary interests the protection of the stockholders of the corporation. This interest derives from the state's interest in maintaining the integrity of its corporations and because the corporate charter, (1) is a contract between the state and the corporation, *Aldridge v. Franco Wyoming Oil Co.*, Del.Ch., 7 A.2d 753, 758 (1939), aff'd. Del.Supr., 14 A.2d 380 (1940); *Lawson v. Household Finance Corp.*, Del.Supr., 152 A. 723, 727 (1930); *State ex rel. Southerland v. U. S. Realty Improv. Co.*, Del.Ch., 132 A. 138 (1926); *Morris v. Amer. Pub. Util. Co.*, Del.Ch., 122 A. 696, 700 (1923); (2) is a contract between the corporation and its stockholders, *Lawson v. Household Finance Corp.*, supra; *Morris v. Amer. Pub. Util. Co.*, supra; and (3) is a contract between the stockholders inter se, *Aldridge v. Franco Wyoming Oil Co.*, supra; *Holland v. Nat. Automotive Fibers, Inc.*, Del., 2 A.2d 124, 127 (1938); *Morris v. Amer. Pub. Util. Co.*, supra. As such, the interests of the state necessarily transcend its own boundaries.

The legitimate local public interest of Delaware sought to be advanced by 8 *Del.C.* § 203, is the protection of a corporation's investors, its stockholders, who have invested in a Delaware corporation in part in reliance on the protections afforded them by the Delaware General Corporation Law, 8 *Del.C.*, ch. 1. The stockholders of a Delaware corporation have certain specific and enforceable rights under their contract with the corporation and the State, for example: to be able to vote on fundamental corporate changes. These rights materially benefit the stockholders and, to the extent they encourage investment in Delaware corporations, the State. Among the rights guaranteed the stockholders under the Delaware Tender Offer Act is the right to a specific and reasonable length of time in which to decide whether to accept a tender offer and tender their shares in response thereto. They have purchased their shares with notice of that provision, or with notice that 8 *Del.C.* § 203 will not apply if the Certificate of Incorporation of the corporation so provides. 8 *Del.C.* § 203(d). Delaware therefore has an interest in the protection of the stockholders of Delaware corporations, and that protection is afforded by the Delaware Tender Offer Act which grants stockholders in a Delaware corporation sufficient time in which to make an informed business judgment concerning a tender offer made to them.

Having decided that Delaware has a legitimate interest in providing that stockholders in a Delaware corporation should have reasonable notice of the terms of a tender offer, I now must consider whether the burden on interstate commerce imposed by the Delaware Tender Offer Act is related to the public purpose which the statute seeks to achieve. That the burden is related to a public purpose is almost beyond question. The Delaware Tender Offer Act is merely a notice act which provides for disclosure of certain information to the tar-

get corporation concerning the offer and the offeror and mandates two waiting periods. See: *American Medicorp, Inc. v. Humana, Inc.*, Del.Ch., 381 A.2d 571 (1977). The first waiting period is for 20 days prior to the making of the offer and the last is the period that the offer must remain open—at least 20 days after the offer is made. 8 *Del.C.* § 203(a)(2). The Delaware Act does not require the disclosure of any information not related to the offer, or to the decision that the stockholder must make; nor does the waiting period serve any purpose other than assuring the stockholder's timely reception of the disclosures thereby enabling him to reflect intelligently and unhurriedly on the offer. The information which must be furnished is substantially the same information which must be disclosed by an offeror under the federal acts.

The Delaware Tender Offer Act significantly does not provide for administrative review, as did an Idaho statute which was struck down in *Great Western United Corp. v. Kidwell*, 439 F.Supp. 420 (N.D.Tex.1977), aff'd., 577 F.2d 1256 (5th Cir. 1978), rev'd. on other grounds sub nom. *Leroy v. Great Western United Corp.*, —— U.S. ——, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). The administrative review provided in the Idaho Act was obviously unnecessary to assure a reasoned business decision by a stockholder and was held to be unrelated to the purpose of the Williams Act and was therefore an unnecessary burden on interstate commerce. No portion of the Delaware Tender Offer Act, however, places a burden on interstate commerce that is not reasonably necessary to permit an informed stockholder to adequately consider a tender offer in order to make a reasoned business decision as to its merits.

Next to be considered is whether the burden placed on interstate commerce by 8 *Del.C.* § 203 is excessive when measured against the interests the Delaware statute seeks to protect, or whether there is an equally efficient but less restrictive means to satisfy the need to protect the state's interest. Defendants characterize Delaware's interest in protecting the stockhold-

ers of its chartered corporations as "marginal" and the burden on interstate commerce as a "heavy and excessive . . . burden on the free trade in securities across state boundaries" which will prevent, they claim, in this case alone, "the injection of approximately $80,000,000 into interstate commerce."

As already discussed, Delaware has a legitimate public interest in affording protection to stockholders who have invested in a Delaware corporation in reliance on the protections afforded by the Delaware General Corporation law. Also significant to Delaware is the revenue it receives from its corporate fees which are affected by the amount of investor confidence in securities of Delaware corporations. More importantly, the burden on interstate commerce imposed by the Delaware Tender Offer Act involves only a short delay, of known duration, during which stockholders of the target corporation may be assured of timely receiving the required disclosures and having time to consider the merits of the offer in an orderly fashion. The Delaware Act requires only disclosures already required under the Williams Act and the Securities Exchange Act of 1934; it poses no substantial threat to the successful completion of a legitimate tender offer. The Delaware Act does not prevent the injection of funds into interstate commerce, but merely insures that the funds being injected are placed in commerce after a rational investor decision based on the investor being apprised of the pertinent information which he needs to make an informed decision. The purposes of the Delaware Tender Offer act, the Federal Securities Act of 1933, and the Federal Securities Exchange Act of 1934 are the same—enhancing investment in the securities market by giving the investor enough information to enable him to act timely, rationally and confidently. Implicit in this goal is the promotion, and not the prevention, of securities transactions.

■ Defendants have therefore not shown clearly and convincingly that 8 *Del.C.* § 203 operates in any manner con-

trary to the test set forth in *Pike v. Bruce Church, Inc.*, supra, and I accordingly find that they have not met their burden to rebut the presumption of constitutionality accorded an Act of the Delaware General Assembly regarding their allegations that the Delaware Tender Offer Act violates the Commerce Clause of the U. S. Constitution.

## IV

## THE TEST OF CONSTITUTIONALITY UNDER THE SUPREMACY CLAUSE

▪ Defendants also contend that the Delaware Tender Offer Act, 8 *Del.C.* § 203, as it applies to the present transaction, is preempted by the federal Williams Act, supra, which also regulates tender offers. The preemption doctrine is founded on the Supremacy Clause, U.S.Const. art. VI ¶ 2, and invalidates those state statutes which: (1) conflict materially with federal legislation, *Franklin Nat. Bk. v. New York*, 347 U.S. 273, 74 S.Ct. 550, 98 L.Ed. 767 (1954), (2) deny rights granted by Congress, *United Mine Workers v. Arkansas Oak Flooring Co.*, 351 U.S. 62, 76 S.Ct. 559, 100 L.Ed. 941 (1956), or (3) stand as obstacles to the full effectiveness of a federal statute, *Colorado Anti-Discrimination Comm. v. Continental Airlines, Inc.*, 372 U.S. 714, 722, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963). In examining a state statute as it relates to a federal statute "the proper approach is to reconcile 'the operation of both statutory schemes with one another rather than holding one completely ousted'." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 127, 94 S.Ct. 383, 390, 38 L.Ed.2d 348 (1973), citing *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963). See generally, Note, *The Preemption Doctrine: Perspectives on Federalism and the Burger Court*, 75 Columbia L.Rev. 623 (1975).

▪ Coexistent with the preemption doctrine is the doctrine that the regulation of corporations should be left to state law, *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and the holdings that states are free to regulate securities trans-actions so long as that regulation does not contravene the purposes of federal securities regulation, 15 U.S.C. § 78bb(a); *SEC v. Nat'l. Securities, Inc.*, 393 U.S. 453, 461, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); hence the recent statement that:

> [C]ongressional legislation is generally enacted against the background of existing state law; Congress has never intended that the entire corpus of state corporation law is to be replaced simply because plaintiff's cause of action is based on a federal statute.

*Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404 (1979). In that case, which concerned the body of law to be applied to a transaction by an investment company governed by both state and federal statutes, the Court further stated that the existence and terms of the federal statutes:

> . . . . do not require that federal law displace state laws . . . . unless the state laws permit action prohibited by the [federal] Acts, or unless "their application would be inconsistent with the federal policy underlying the cause of action." [citations]. Although "[a] state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation," [citations], federal courts must be ever vigilant to insure that application of state law poses "no significant threat to any identifiable federal policy or interest . . . ." [citations]. And of course this means that "unreasonable" [citations] or "specific aberrant or hostile states rules" [citation] will not be applied.

441 U.S. 479–480, 99 S.Ct. 1837–38, 60 L.Ed.2d 413.

▪ As the foregoing makes clear, the test this Court must apply is whether defendants have shown clearly and convincingly that 8 *Del.C.* § 203 stands as an obstacle to the full implementation of the Congressional policy reflected in the Williams Act, *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), or permits acts prohibited by the federal statute, *Burks v. Lasker*, supra, and

cases cited therein. This they have not done.

The Williams Act, like all federal securities legislation, is designed to protect investors by requiring disclosure of material information. See: 113 *Cong.Rec.* 24664 (1967). Disclosure of information alone cannot aid the investor, however, unless he has an opportunity to read and analyze the information disclosed. The Federal Securities Act of 1933 and the Federal Securities Exchange Act of 1934 reflect a consistent policy of leaving the ultimate decision on the desirability of an investment to the investor, limiting federal intervention in the decision making process to the requirement of adequate disclosure intended to inform the investor. See: Aranow & Einhorn, *State Securities Regulation of Tender Offers*, 46 N.Y.U.L.Rev. 467 (1971).

The Williams Act provides for no prior disclosure of an intent to make an offer for the tender of shares, but provides for a minimum of 7 days (if the offer is for all shares), 15 *U.S.C.* § 78n(d)(5), or 10 days (if the offer is for a portion of the shares), 15 *U.S.C.* § 78n(d)(6), during which the offer must stay open. It also provides investors the limited right to withdraw tendered shares within 7 days after the offer is published or, in the event the offer stays open long enough, at any time after 60 days. 15 *U.S.C.* § 78n(d)(5). Finally, it provides for disclosure of certain material information to the target corporation at the time of the offer. 15 *U.S.C.* §§ 78n(d)(1), 78m(d).

The Delaware Tender Offer Act provides investors certain protections greater than the Williams Act: a minimum 20-day pre-offer notification period, a further 20-day period during which the offer must remain open, the right to withdraw tendered shares at any time during the pendency of the offer, and the disclosure of certain information substantially the same as that required by the Williams Act.

By the use of Congressional history, defendants first contend that the Delaware Tender Offer Act's pre-offer notification requirement, pursuant to 8 *Del.C.* § 203(a)(1), conflicts with the Williams Act

in that it is a provision which Congress specifically considered and rejected and disrupts the Congressional policy of favoring neither the offeror nor the incumbent management of a target corporation in the interest of protecting the investor.

The defendants' reliance on legislative history is misplaced. If the language of the Williams Act is ambiguous, legislative history could be used to ascertain the legislative intent so that a Court's interpretation of the statute would comport with the statutory purpose. But the language of the Williams Act is not ambiguous, and where ambiguity is lacking there is no room for judicial construction and no need to review the legislative history. *A & P Stores v. Hannigan,* Del.Supr., 367 A.2d 641, 642 (1976). In any case, the failure of a legislative body to enact a proposal submitted with the bill is not controlling factor in statutory interpretation. *Opinion of the Justices,* Del.Supr., 202 A.2d 276, 277 (1964). And as the United States Supreme Court has stated: "to translate [an] Act by a process of interpretation into an equivalent of the bills Congress rejected is, we think, beyond the fair range of interpretation." *Western Union Telegraph Co. v. Lenroot,* 323 U.S. 940, 508–509, 65 S.Ct. 335, 344, 89 L.Ed. 414 (1945).

Defendants also argue that the doctrine of silence may be used as legislative history to show that Congress intended to preempt the field of tender offer regulation. The showing that Congress failed to adopt a proposed pre-offer notice requirement as part of the Williams Act, however, is not the same as showing that Congress intended by its silence to preempt the entire field because the regulation of corporations has historically been left largely to state law, and the states are free to regulate securities' transactions so long as they do not conflict with the federal scheme. *Cort v. Ash,* supra; *SEC v. Nat'l Securities, Inc.,* supra; *Burks v. Lasker,* supra. In the absence of a finding that Congress intended to occupy the field of otherwise concurrent regulatory power and thus preclude state regulation, the doctrine of silence does not

apply. *California v. Zook*, 336 U.S. 725, 733, 69 S.Ct. 841, 845, 93 L.Ed. 1005, *reh. denied*, 337 U.S. 921, 69 S.Ct. 1152, 93 L.Ed. 1729 (1949); *Ogden v. Saunders*, 12 Wheat. 213, 25 U.S. 213, 6 L.Ed. 606 (1827).

The United States Supreme Court has stated that the paramount policy of the Williams Act is the protection of investors, and disclosure is the means to that end. *Piper v. Chris-Craft Industries*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). The argument that Congress intended to maintain neutrality in contests for control and that the Delaware Tender Offer Act disrupts the balance between the offeror and the target corporation's management is purely speculative. True neutrality means that neither side in tender offer battles should be permitted to deny a stockholder the opportunity to make an informed decision.

The Delaware Tender Offer Act furthers the Congressional policy of investor protection by requiring early public disclosure and by providing the investor reasonably adequate time in which to make a rational business decision concerning his investment. The waiting periods mandated by the Delaware Tender Offer Act do not necessarily have the incidental effect of favoring the target corporation. Actions taken by directors solely to protect their incumbency are, of course, open to attack, and the directors would be personally liable in the event that it can be shown that a particular action was undertaken only to protect their incumbency. *Schnell v. Chris-Craft Indus., Inc.*, Del.Supr., 285 A.2d 437, 439 (1971); *Baron v. Allied Artists Pictures Corp.*, Del. Ch., 337 A.2d 653, 657 (1975).

The Delaware Tender Offer Act's pre-offer notification requirements are designed to permit investors adequate time to be assured of timely receiving the pertinent information and to have the time to make a rational choice, with the advice of both the offeror and the target corporation's management, without affecting the balance of power between offeror and target, Arsht, *The Delaware Takeover Statute—Special Problems for Directors*, 32 Bus.Law. 1461

(1977). These provisions therefore further the purpose of the Williams Act—protection of investors through making sure that investors are timely furnished with relevant information.

Defendants have also attacked the requirement of the Delaware Tender Offer Act of a 20-day minimum duration of the offer as being in conflict with the Williams Act's 7 or 10 day requirements. It is difficult to perceive why the 20-day time period in which the offer must remain open under the Delaware Tender Offer Act violates the duration requirements of the Williams Act. The Williams Act provides a minimum time for compliance by an offeror; it nowhere proscribes a maximum period during which the offer must remain open, and, since it sets only a minimum, the states are free to provide greater protections so long as the state protections are not in conflict with the Congressional purpose or do not impose an undue burden on commerce. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). The Delaware provision permitting stockholders to withdraw their shares at any time during the pendency of the offer is obviously designed to permit the investor to deal with his investment intelligently and to give him the time which he needs to make his rational business decision, although it might enhance risk and depress the price arbitrageurs might pay for the stock to be tendered. See: Henry: *Activities of Arbitrageurs in Tender Offers*, 119 Pa.L.Rev. 466 (1971).

V

RECENT FEDERAL CASES INAPPLICABLE

Defendants cite the Fifth Circuit decision of *Great Western United Corp. v. Kidwell*, supra, as holding that all state tender offer statutes are unconstitutional because of the Supremacy Clause. In *Great Western* the Court struck down an Idaho Tender Offer Act which purported to regulate offers for the outstanding stock of corporations hav-

ing substantial assets in Idaho and provided for state administrative review of the proposed tender offer and for disclosure of information by the offeror not required by the Williams Act. The statute also permitted the directors of the target corporation to waive the operation of the statute in the case of any particular tender offer of which they approved. The Circuit Court of Appeals held the underlying purpose of the Williams Act, supra, to be the protection of investors. It then stated:

> Congress chose this goal in the Williams Act and adopted a distinct means of achieving it. Essentially, Congress relied upon a "market approach" to investor protection. The function of federal regulation is to get information to the investor by allowing both the offeror and the incumbent managers of a target company to present fully their arguments and then to let the investor decide for himself.

In adopting the finding of the District Court that the Idaho tender offer statute conflicted with the Williams Act by adopting a divergent approach to investor protection, which placed the investment decision in the hands of the directors of the target corporation and the administrative body, the Circuit Court found the Idaho statute to be preempted by the Williams Act: "Idaho's statute is preempted, because the market approach to investor protection adopted by Congress and the fiduciary approach adopted by Idaho are incompatible." 577 F.2d 1279.

The Delaware Act leaves the investment decision entirely to the investor, consonant with the policy of the Williams Act. The role of the directors of the target corporation is purely advisory—they may not waive the application of the statute with regard to a specific tender offer, they may not invoke a state administrative hearing, and they may not delay the tender offer beyond the time specified by the offeror. The holding in *Great Western United Corp. v. Kidwell,* supra, is therefore inapplicable to the Delaware Tender Offer Act.

Lastly, defendants cite *Dart Industries, Inc. v. Conrad,* D.C.S.C., 462 F.Supp. 1 (1978) as holding that the Delaware Tender Offer Act is unconstitutional. The District Court's holding that the Williams Act preempted the Delaware Tender Offer Act is unpersuasive as to the present suit because the District Court made two incorrect assumptions. *First,* it assumed that the purpose and spirit of the Williams Act is to maintain neutrality between the offeror and the target corporation by equalizing the power to influence stockholder decisions. This was contrary to the teaching of *Piper v. Chris-Craft Industries,* supra, and *Great Western United Corp. v. Kidwell,* supra, which found that preemption was predicated on the existence of divergent approaches to stockholder protection between the Williams Act and the State statutes. *Secondly,* the District Court ignored the proper approach to a preemption question as set forth in *Merrill, Lynch, Pierce, Fenner & Smith v. Ware,* supra, and discussed previously.

The discussion by the District Court in *Dart Industries v. Conrad,* supra, of the Commerce Clause of the U. S. Constitution is similarly unpersuasive because the Court failed to recognize the interest of Delaware, as the chartering state, in regulating tender offers made for securities in a Delaware corporation, as discussed, infra.

I therefore find that defendants have not shown clearly and convincingly that 8 *Del.C.* § 203 is preempted by federal legislation and is therefore unconstitutional.

## VI

### SUMMARY

Defendants have not sustained their burden of showing that 8 *Del.C.* § 203 is clearly unconstitutional. Wylain has shown that it will be irreparably harmed if defendants do not comply with 8 *Del.C.* § 203 because it, and its stockholders, will be denied a reasonable opportunity to evaluate and analyze defendants' offer to purchase the shares of Wylain. Wylain's po-

tential harm in the event preliminary injunctive relief is not granted outweighs any harm defendants may suffer by the limited delay occasioned by the relief granted. In any event, defendants could have avoided the possibility of harm to themselves by complying with the clear and unmistakable terms of 8 *Del.C.* § 203 but have chosen not to do so and have assumed any harm that might occur to them as a result of their deliberate course of action.

Wylain's application of a preliminary injunction is therefore granted.