# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| Ambient Heating & Cooling, LLC, a Delaware Limited Liability Company, | ) ) ) | C.A. No. 9596-MA |
| Petitioner, | ) | |
| v. | ) ) | |
| Ernest D. Shepherd, Jr., and indivdual, and Christopher Ferguson, and individual both d/b/a/ Ambient | ) ) ) ) | |
| Respondents. | ) | |

## MASTER'S REPORT

Date Submitted:  July 11, 2016
Draft Report:  October 21, 2016
Final Report:  March 28, 2017

In February 2007, a Delaware limited liability company was formed and began to provide heating, ventilation, and air conditioning services in Kent and New Castle Counties.  In January 2013, a partnership was established to provide heating, ventilation, and air conditioning services in New Castle County.  The two businesses have similar names and similar marks and provide services to residential customers. In April 2013, the managing member of the limited liability company contacted one of the partners and asked him to consider changing the name of his business.  The partner refused.  The limited liability company now has petitioned this Court, seeking to enjoin the partnership from continuing to operate and advertise its heating and

cooling business in Delaware under the name "Ambient." For the reasons that follow, I recommend that the Court grant injunctive relief in this case.

## Factual Background

In 2006, after many years of working in the heating, ventilation, and air conditioning ("HVAC") industry, Scott Lang and Sean Wilson decided to start their own business providing HVAC services.[1] They wanted a name for their business which started with the letter "A" and, after reviewing advertisements in the phone book and customer lists at HVAC supply houses, they settled on the name "Ambient Heating and Cooling."[2] On February 6, 2007, Petitioner Ambient Heating & Cooling, LLC ("Ambient LLC") was formed and has been in business ever since.[3] Ambient LLC grew through word of mouth and state-wide advertisements in the phone book.[4] However, the recession of 2008-2009 took its toll on the business and Ambient LLC ceased placing ads in the phone book.[5] In early 2011, Wilson left the company to find other employment, and Lang slowly built up the company again on his own.[6] By 2012, business had sufficiently rebounded that Ambient LLC was able to hire an employee to help Lang with installations and service calls.[7]

---

[1] Trial Transcript ""TT") 15-18.
[2] TT 18-19.
[3] Joint Trial Exhibit ("JX") C.
[4] TT 20.
[5] TT 52, 67.
[6] TT 20-21.
[7] TT 21-22.

Ambient LLC is based in Dover, Delaware and provides HVAC services mostly to residential customers and a few light commercial customers in Kent and New Castle Counties.[8]  Ambient LLC's mark is displayed on the company's white truck and black sweatshirts.[9]  The mark depicts a cloud partially shaped like a human face which is blowing steam out of its mouth.  A yellow sun with extended rays appears to be rising up behind the cloud.  The word "Ambient" is prominently displayed over this image and the words "heating & cooling" are arrayed in smaller letters under the cloud.  The company's invoices and yard signs display the words "Ambient Heating & Cooling LLC" and the company's telephone numbers.[10]

Respondents Ernest Shepherd and Christopher Ferguson have worked in the HVAC industry since the late 1990s.[11]  For the past eight years, Shepherd has been employed by a company that manages commercial high-rise facilities and construction,[12] but in 2012 he and Ferguson decided to start their own HVAC business as partners.[13]  They also thought the letter "A" was a good letter to use and chose "Ambient" for their business name.  According to Shepherd, "ambient" is a term frequently used in the HVAC industry.[14]  In early December 2012, Shepherd

---

[8] TT 42, 46.
[9] JX I.
[10] *Id.*
[11] TT 90-91.
[12] TT 91.
[13] TT 92.
[14] *Id.*

went to the New Castle County Prothonotary's Office and registered "Ambient" as the trade name of their business,[15] using the address of Shepherd's home in Hockessin - 3701 Oak Ridge Road - as Ambient's address.[16]

The two partners are responsible for different tasks. Ferguson goes out on installation and service calls during the day, and Shepherd does estimates and some service calls in the evening.[17] Ferguson's wife answers the telephone for Ambient and schedules the customers' appointments.[18] Shepherd's wife designed the mark that is displayed on Ambient's white truck, yard signs, invoices, proposals, advertising, and blue shirts.[19] Ambient's mark prominently features the word "AMBIENT" without the letter "I."[20] In the letter's place is an image of a large thermometer with lines and red mercury extending above and below the other letters. Below "AMBIENT" are the words "heating" and "cooling" in smaller letters, with "heating" to the left and "cooling" to the right of the thermometer's bulb.[21]

---

[15] TT 93; JX A. In 2013, Shepherd and Ferguson executed a partnership agreement, TT 96, and they have continued to operate the business as partners even though they incorporated as Ambient, Inc. in January 2015. TT 101. JX B.
[16] TT 102.
[17] TT 118.
[18] TT 81-82, 88.
[19] TT 94-95.
[20] JX I.
[21] *Id.*

In early 2013, Lang learned through a mutual acquaintance that another business called Ambient was located in the Hockessin area, but did nothing about it.[22] In the spring of 2013, however, Lang became concerned after speaking with his daughter who had seen Ambient's truck in Newark and mistaken it for her father's truck, and with another acquaintance who had told Lang that Ambient was doing business up north.[23] Lang did some research and found a Facebook advertisement listing the business as "Ambient Heating and Cooling."[24] He called the telephone number listed on the website and Ferguson's wife answered the telephone saying: "Ambient Heating and Cooling." Lang identified himself and his business, and asked to speak with the owner. When Shepherd returned his call, Lang asked him to consider changing his business's name, but Shepherd refused.[25] At trial, Shepherd testified that he already had put too much time and money into the business to consider changing its name.[26] After this conversation, Shepherd attempted to register the name "Ambient" with the United States Trademark and Patent Office

---

[22] TT 24-25. Shepherd learned of Ambient LLC's existence through this mutual acquaintance in February or April of 2013. Stipulation of Facts, at ¶ 9. Docket Item ("DI") 54.
[23] TT 25-26.
[24] TT 27.
[25] TT 28-29.
[26] TT 98, 115.

("USTPO"), but his application was denied. According to Shepherd's testimony, it was denied because "ambient" is a generic word.[27]

In 2013, Lang received a voicemail from a woman looking for "Ernie Shepherd" with "Ambient Heating and Cooling" to replace her water heater.[28] In June 2013, Ambient LLC received a notice of a code violation from the City of New Castle for working at a residence without a current business license.[29] Lang checked his records and discovered that Ambient LLC had not done any work at the address listed in the citation.[30] What had occurred was that Shepherd and Ferguson helped a friend finish an installation job at his home in New Castle and, in exchange, they had put their yard sign advertising Ambient in their friend's front yard.[31] In March 2014, Lang noticed that Angie's List contained a profile for "Ambient Heating & Cooling" with the address of 3701 Oak Ridge Road in Wilmington, Delaware.[32] In May 2014, Ambient LLC received an invoice from Pierce-Phelps, Inc., an HVAC supply house,

---

[27] TT 98-99. After trial, the parties stipulated to the admission of the July 15, 2013 letter from the USTPO that, in fact, had not denied Ferguson's application to register Ambient's mark because the word "ambient" was generic. JX J. Instead, the USTPO had denied the application because of the likelihood of confusion of Ambient's mark with a previously registered mark of a company called Ambient Air, Inc., based in Florida. The registered mark of that corporation consisted of the words "AMBIENT AIR" prominently displayed in a circle formed by two curved arrows pointing to the word "surrounding" at the top and the words "you in service" at the bottom of the circle. *Id.*
[28] TT 23-24.
[29] TT 33; JX E.
[30] TT 33-34.
[31] TT 104-105.

for parts that Lang had not ordered.[33]   The invoice had been signed by Ferguson.[34]

Another invoice from Pierce-Phelps, dated May 2015, listed items that Lang had asked his assistant to pick up, but the invoice was billed to Ambient with the notation "attention Chris Ferguson."[35]   Around this time, Lang received a phone call from Kurt Vanscoy asking to speak with Ferguson about doing more work for Vanscoy.[36] In October 2015, Ambient LLC was contacted by Lou Mazzio who was looking for Ambient to do some work at his house in Wilmington.[37]   As a subcontractor, Ambient LLC did some work at the Gaskell residence where Mr. Gaskell mentioned that Ambient LLC previously had worked for his parents.[38]   Mrs. Gaskell then asked Lang why he had never shown up to give her a price for a job.   Confused by his response, Mrs. Gaskell asked whether he worked out of Hockessin and Lang replied that he was out of Dover.[39]   Glenn Fedele called Ambient LLC looking for Shepherd with "Ambient Heating and Cooling."[40]   Similarly, Lang knew an acquaintance who had tried to contact Lang through Ambient's Facebook page.[41]

---

[32] JX D.

[33] TT 35-36; JX F.

[34] TT 35-36.

[35] JX G.

[36] TT 44.

[37] TT 45; Stipulation at ¶16.

[38] TT 45.

[39] TT 45-46.

[40] TT 46.

[41] TT 49-50.

Each time Lang answered a call from someone looking for Ambient, it took time away from Ambient LLC.[42]  In addition, Lang decided not to pay for advertising during 2013-2016 because he did not want to spend money advertising his own company only to provide a benefit to Ambient instead.  During the past three years, the growth of Ambient LLC has depended on displaying the company's name and mark on yard signs, shirts, and its truck, in addition to word-of-mouth communications.

In contrast, Shepherd and Ferguson have continued to advertise their business on the radio, in print, and on the web, and have seen their business grow at a rate of 30 percent per year since 2013.[43]  On two occasions, Mrs. Ferguson received phone calls from a customer trying to reach Lang at Ambient LLC.[44]  Mrs. Ferguson no longer answers the telephone with the words "Ambient Heating and Cooling;" instead, she now says "Ambient."[45]  Ambient's business is currently advertised on Angie's List and Facebook under the name "Ambient HVAC," but the words

---

[42] All business calls are transferred to Lang's cellular phone.  TT 23.  If he is driving, he has to stop the truck to take the call.  In addition, Lang has to look up the company's customer list each time to see if the call is from one of Ambient LLC's customers or one of Ambient's customers.  TT 46-47.
[43] TT 100.
[44] TT 83-84.
[45] TT 83.

"heating" and "cooling" are still displayed on Ambient's trucks, invoices, yard signs, and the shirts worn by its partners and employees.[46]

## Procedural Background

On April 30, 2014, a petition for injunction was filed by Ambient LLC.[47] Respondents Shepherd and Ferguson filed their answer and counterclaim on June 4, 2014.[48] The following day, Petitioner filed its response to Respondents' counterclaim.[49] On June 19, 2014, Respondents filed an amended answer and counterclaim.[50] On April 17, 2015, Petitioner filed an amended petition for injunction, which was followed on May 7, 2015, by the filing of Respondents' answer to the amended petition and counterclaim.[51] As a result of considerable discovery efforts, the parties were able to stipulate to numerous facts.[52] A one-day trial was held on March 23, 2016,[53] and was followed by the submission of the parties' post-trial closing arguments/briefs.

## Issues

---

[46] TT 111-113.
[47] DI 1.
[48] DI 6.
[49] DI 7.
[50] DI 9.
[51] DI 26. Respondents have waived their counterclaim by failing to address it in their post-trial answering brief.
[52] DI 54.
[53] DI 55.

Petitioner contends that common law trademark and the Delaware Deceptive Trade Practices Act ("the Act") should prevent Respondents from continuing to trade using the name Ambient. Under the common law, a trademark acquires specific significance through prior exclusive use in the same market or from having acquired a secondary meaning and, thereafter, is entitled to protection from use by others. Under the Act, a person engages in a deceptive trade practice if he engages in acts that cause a "likelihood of confusion," *inter alia*, as to the source of services. In this case, Petitioner has been providing heating and air conditioning services to its customers in Kent and Sussex Counties since 2007 under the trade name or mark "Ambient Heating and Cooling." Petitioner argues that in 2013, Respondents also began to use the words "Ambient," "Heating," and "Cooling" in their mark, as evidenced by the joint trial exhibits. Since 2013, the parties have been providing the same services primarily in the same jurisdiction, i.e., in New Castle County, although the parties also perform some work in Kent County, and to a lesser extent, Sussex County. There have been at least a half dozen instances when customers, suppliers, and even a municipal government have been confused by the presence of two HVAC businesses both bearing the name Ambient operating in Delaware.

Respondents contend that Petitioner has not shown that it is entitled to the exclusive use of the word "Ambient" in its trade name. They argue that the words "heating," "cooling," and "HVAC" are generic terms identifying the basic services

both parties are providing, and that the word "ambient" itself is used often in the HVAC business and refers to the "surrounding air." As a result, Respondents argue that this Court should find the word "Ambient" is generic and cannot be trademarked. At most, since the word "ambient" is not as commonly used as the words "heating" and "cooling," it may be regarded as descriptive. If so, then Petitioner's claim must fail because it has not argued that the word "ambient" has become so invested with secondary meaning in Delaware as to become known as referring only to Petitioner. Respondents further argue that: (1) the use of the word "Ambient" predates Petitioner's use because another HVAC company with the same name has been operating in Delaware since before 2007; (2) Petitioner has done no advertising since 2010 to associate the word "ambient" with Petitioner in the public's mind; and (3) Petitioner has presented no market evidence that would support a finding of secondary meaning.

Petitioner responds that the word "ambient" is not descriptive because it does not describe the actual types of services that are being offered, i.e., the installation and repair of heating, ventilation, and air conditioning equipment. Instead, it suggests that the services being offered will help customers to control their surroundings. As a suggestive trade name, the word "ambient" is entitled to protection under the common law. Even if it were only a descriptive trade name, Petitioner contends that "ambient" has acquired sufficient secondary meaning to preclude Respondents from

usurping it. Small businesses cannot afford to procure a professional market survey to prove secondary meaning, and there is no case law in Delaware requiring such proof. Instead, there must be evidence of the likelihood that the business names will be confused, and Petitioner contends that it has amply demonstrated the confusion already experienced by consumers, suppliers, and also at least one governmental agency.

## Analysis

The Act provides, under 6 *Del. C.* § 2632(a)(2), that "[a] person engages in a deceptive trade practice when, in the course of a business … that person … causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services[.]" In this case, the likelihood of confusion is alleged to have arisen because of the similarity in names and marks of Ambient LLC and Ambient. Akin to common law claims of trademark infringement and unfair competition,[54] a successful claimant under the Act may be entitled to additional remedies than would otherwise be available under the common law.[55] To determine whether a trade name or mark creates a likelihood of confusion, the Court

---

[54] *See generally, Coca-Cola Co. v. Nehi Corp.*, 36 A.2d 156 (Del. 1944); *Air Reduction Co., Inc. v. Airco Supply Co., Inc.*, 258 A.2d 301(Del. Ch. 1969); *United States Plywood Co., Inc. v. United Plywood Corp.*, 161 A. 913 (Del. Ch. 1932); *American Radio Stores, Inc. v. American Radio & Television Stores Corp.*, 150 A. 180 (Del. Ch. 1930).

must consider: (1) the degree of similarity between the marks; (2) the similarity of products for which the name is used; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the petitioner's mark; (6) whether there has been actual confusion; and (7) the intent of the alleged infringer to palm off his products as those of another.[56]

A. Similarity of the Marks

Both marks start with the word "Ambient" and both also contain the words "heating" and "cooling." The marks would be identical except that Ambient LLC's mark includes an image of a cloud while Ambient's mark replaces the letter "I" with an image of a thermometer. Despite this substitution, the average consumer would read this mark as "Ambient."

B. Similarity of the Products

Both businesses engage in the same trade, i.e., the installation, maintenance, and repair of heating, ventilation, and air conditioning systems. Ambient LLC provides approximately 85 percent of its services to residential customers and 15 percent to light commercial customers like liquor stores. There was no statistical

---

[55] *See 6 Del. C.* § 2533(c). Ambient LLC is seeking the traditional remedy of a permanent injunction on Respondents' use of the word "Ambient," and payment of attorneys' fees and costs under the Act.

[56] *Diamond State Tire, Inc. v. Diamond Town Tire Pros & Auto Care, LLC*, 2016 WL 4384304, at * 3 (Del. Ch. Aug. 15, 2016) (citing *Draper Commc'ns, Inc. v. Del. Valley Broadcasters Ltd. P'ship,* 505 A.2d 1283, 1290 (Del. Ch. 1985)).

evidence presented regarding the types of customers served by Ambient, but the customers mentioned during the trial were all residential.

C. Area and Manner of Concurrent Uses

Ambient LLC does considerable work in New Castle County, some work in Kent County, and a small amount of work in Sussex County. Ambient performs the vast majority of its work in New Castle County, with little or no work in the lower two counties. Occasionally, Ambient performs work in other states such as Pennsylvania.

D. Degree of Care Likely to be Exercised by Consumers

There was no evidence presented on this issue, but to the extent that installation of a new heating or air conditioning system can be expensive, one assumes that most consumers would exercise some degree of care when selecting an HVAC business to do the work.

E. Strength of the Mark

A business's trade name or mark is entitled to protection against imitation or wrongful use where it has priority of use in the marketplace and has achieved community acceptance to the extent that prospective customers view the trade name or mark as identifying the goods or services produced or performed by a particular

person.[57]   In this case, it is undisputed that Ambient LLC's mark has priority of use in New Castle and Kent Counties.[58]   From February 2007 until January 2013, Ambient LLC was the only HVAC enterprise with the trade name and mark containing the words "ambient," "heating," and "cooling" which was operating in New Castle and Kent Counties.  During this time, it was advertising its name by various means and expanding its customer base.  Ambient nevertheless contends that the name failed to gain secondary meaning because it is merely descriptive, and names that are generic or descriptive of different products are not worthy of protection.

Whether a trade name and mark is strong and, therefore, worthy of protection, depends upon the category in which it falls:  (1) generic; (2) descriptive; (3)

---

[57] *See Bank of Delaware Corp. v. First Nat'l Bank of Georgetown*, 1983 WL 17979, *3 (Del. Ch. 1983) ("Secondary meaning refers to that quality of a name's public recognition which causes those who are exposed to it in the marketplace to assume that the goods or services associated with the name derived from a single source.") (citing *Scott Paper Co. v. Scott's Liquid Gold Inc.,* 589 F.2d 1225 (3rd Cir. 1989); *Kampgrounds of America, Inc. v. North Delaware A-OK Campground, Inc* , 415 F. Supp. 1288 (D. Del. 1976) , *aff'd* 556 F.2d 566 (3rd Cir. 1977)).

[58] At trial, there was evidence of a business called Ambient Heating and Air Conditioning, located at 702 Fallon Avenue in Wilmington, Delaware, which was listed as a customer at the R.E. Michaels supply house in Elsemere.  It was disputed whether this Ambient was in operation when Lang started his company in 2007.  TT 122-24.  The evidence shows that prior to registering Ambient as a trade name in December 2012, Shepherd checked the Prothonotary's Office and found no other "Ambient" or "Ambient Heating and Cooling" listed there.  TT 93.  What this suggests is that the third Ambient, if it was providing HVAC services in New Castle County at this time, was not doing so under a trade name similar to the parties'

suggestive; and (4) arbitrary or fanciful.[59]  The words "heating" and "cooling" appear to fall within the descriptive category because they convey an immediate idea of the types of service offered by Ambient LLC.  However, when used as an adjective, the word "ambient" means "surrounding on all sides," "encompassing," or "enveloping."[60]  The addition of the word "ambient" distinguishes Petitioner's trade name and elevates it to the suggestive category because it requires some "imagination, thought, or perception" on the part of a customer to determine that the company is offering more than just an air conditioner or heater, for example, but is also providing entire systems for controlling the warmth and coolth of the customer's physical environment.[61]  It is, therefore, a strong mark.

F.  Actual Confusion

There was evidence of actual confusion by several customers or prospective customers of both businesses.  A supplier and the City of New Castle also confused the names of the businesses on one or two occasions, raising the specter of damage to Ambient LLC's credit, reputation, and ability to provide services.[62]  Evidence of

---

names.  TT 93.  Accordingly, the evidence regarding this other Ambient can have no bearing on my analysis of the strength of Ambient LLC's mark.

[59] *Diamond State Tire, Inc.*, 2016 WL 4384304 at *3.

[60] *Webster's Third New International Dictionary, Unabridged*, Merriam-Webster, Inc. (© 2002 ).

[61] *Diamond State Tire, Inc.,* 2016 WL 4384304*, at* *3.

[62] Although the invoice mix-up at Pierce-Phelps resulted in no financial harm because the parties had cash accounts there, Lang testified that supply houses deal only with certain brands of equipment, and Ambient LLC has to be certified to install those

actual confusion is probative of the likelihood of confusion.[63]  Even though recently Ambient has limited its use of the name "Ambient Heating and Cooling," it continues to use "Ambient" in conjunction with the words "heating" and "cooling" or "HVAC" on its trucks, clothing, yard signs, advertisements, and paperwork.  Therefore, I do not consider there has been any significant reduction in the likelihood of confusion among customers in the small marketing area in which these businesses operate.

G.  The Intent of Ambient

Ambient LLC does not accuse Ambient of having intended to create confusion when it chose to do business under a similar name.  Nevertheless, Ambient LLC argues that Ambient's decision to continue using its name after being informed of Ambient LLC's existence warrants a finding in its favor.  The record shows that Shepherd and Ferguson were aware of the existence of Lang's company through a mutual acquaintance either in February 2013 or April 2013 before Lang called Ambient's telephone number.[64]  Shepherd refused Lang's request to change his trade name even though he and Ferguson had just commenced operations a few months

---

brands.  If Ambient purchased some equipment, but the serial number was registered on Ambient LLC's account, there could be negative consequences for Ambient LLC and the dealer, and physical harm might result if the components were not installed properly, although there was no suggestion that the employees of either business were anything other than competent.  TT 37-41.

[63] *Draper Communications, Inc. v. Delaware Valley Broadcasters Ltd. P'ship,,* 502 A.2d 1283, 1295 (Del. Ch. 1985).

[64] TT 27-28.

earlier and the business had not yet received many calls.[65]  He then attempted to register his trade mark with the USPTO, to no avail.   Given Shepherd's response to Lang's request and the fact that since 2013, Ambient's business has grown and now has five employees and receives over 2000 calls a year,[66] I find that there was at least some intent on the part of Shepherd and Ferguson to trade on the good will and reputation of Ambient LLC.[67] As a new business, they also had a financial incentive to do so.[68]   Considering all the above factors, I find that Ambient LLC has demonstrated an infringement on its trade name and a violation of Delaware's Deceptive Trade Practices Act.

Ambient LLC is seeking a court order enjoining Respondents Shepherd, Ferguson, and Ambient from using the trade name "Ambient Heating & Cooling" and holding themselves out to the Delaware HVAC market as "Ambient" performing heating and/or cooling services.  In order to obtain a permanent injunction, a party must demonstrate that: (1) its claim has actual merit; (2) it will suffer irreparable harm if injunctive relief is not granted; and (3) the harm that would result if an injunction does not issue outweighs the harm that would befall the opposing party if

---

[65] TT 81.

[66] TT 81, 119.

[67] *See Draper Communications, Inc.*, 505 A.2d at 1296 (citing *Pathfinder Communications Corp. v. Midwest Communications Co.*, 593 F. Supp. 281, 287 (N.D.Ind. 1984)).

[68] *Id.*

the injunction is issued.[69]  I have already found that Ambient LLC has demonstrated actual success on the merits of its claims.  Regarding irreparable harm, Ambient LLC has demonstrated that actual confusion has occurred in the HVAC market in New Castle County, in particular, as a result of there being two HVAC businesses with very similar names operating in the same market.  In all probability, this confusion will continue and worsen over time, causing irreparable harm to Ambient LLC unless an injunction issues.  Regarding the balancing of the equities, it appears that Ambient is the larger of the two businesses, at least in terms of number of employees, although Ambient LLC and Ambient each receives approximately 2000 calls a year.  Lang has worked for nine years during periods of economic growth and severe recession to promote his HVAC company in Delaware.  Shepherd and Ferguson began working only three years ago after the economy already had begun to improve.  There was no evidence presented of any hardship Shepherd and Ferguson might suffer if forced to change the trade name of their business, although obviously there would be financial costs involved.  Nevertheless, Shepherd and Ferguson had the opportunity to change the name of their business well before it became successful, and they refused to do so.  They also failed to heed the implicit warning in the July 2013 USPTO rejection

---

[69] *Id.* at 1288 (citing *Gimbel v. Signal Cos., Inc.,* 316 A.2d 599, 602-603 (Del. Ch.), *aff'd*, 316 A.2d 619 (Del. 1974); *Wylain, Inc. v. TRE Corp.,* 412 A.2d 338, 342 (Del. Ch. 1979); *Thomas C. Marshall, Inc. v. Holiday Inn, Inc.,* 174 A.2d 27, 28 (Del. Ch. 1961); *Galella v. Onassis*, 353 F. Supp. 196, 235-236 (S.D.N.Y. 1972), *modified on other grounds*, 487 F.2d 986 (2d Cir. 1973); 43 C.J.S. *Injunctions* §16 (1978)).

letter, i.e., that there would be a likelihood of confusion of their mark with any other mark containing the word "Ambient" in the HVAC trade. For these reasons, I conclude that the balance of hardships favors Ambient LLC.

Exceptions

Respondents have taken three exceptions to my draft report. First, they argue that the parties have different trade names and dissimilar marks. Second, they argue that Petitioner's mark – "Ambient Heating and Cooling" does not fall within the category of a suggestive mark. Instead, Respondents argue that it is, at most, a descriptive mark since the words, taken together, merely describe what the parties do. Third, they argue that there was no evidence presented at trial that Respondents sought to trade on the goodwill or reputation of Ambient LLC. Respondents argue that only rarely did any confusion occur between their customers, and when it did, Respondents responded very promptly.

In response, Petitioner argues that Respondents have waived their right to take exception by failing to file a timely opening brief. Even if that were not the case, Petitioner argues that Respondents' emphasis on the graphic appearance of the parties' logos is misplaced, given that they have identical trade names. In addition, Petitioner argues that Respondents have effectively admitted that "Ambient Heating and Cooling" is a suggestive mark even though they attempt to argue otherwise since

Respondents had to draw an inference from the trial testimony regarding the meaning of the word "ambient." Finally, Petitioner argues that the instances of actual confusion over the names of the two businesses is a measure, but not the only measure of Respondents' intent to trade on the good will of Ambient LLC. Instead, the totality of facts presented at trial, including Respondents' early awareness of the existence of Petitioner's business, Respondents' refusal to change their trade name, and Respondents' attempt to register the trade name "Ambient Heating and Cooling" with the United States Patent and Trademark Office subsequent to learning of Petitioner's business, demonstrates that Respondents intended to trade on Petitioner's name.

I have reviewed the parties' briefs very carefully. Assuming, for the sake of this discussion, that Respondents' Opening Brief was timely filed, I see no reason to alter the findings of fact and conclusions of law contained in my draft report. My recommendations to the Court in this matter remain the same. Therefore, I am adopting my draft report as my final report as modified herein. The parties are referred to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,
/s/ Kim E. Ayvazian
Kim E. Ayvazian
Master in Chancery

KEA/kekz