**MONOGRAM INDUSTRIES, INC., a Delaware Corporation, Defendant below, Appellant,**

v.

**ROYAL INDUSTRIES, INC., a Delaware Corporation, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted Nov. 30, 1976.

Decided Dec. 3, 1976.

Opinion Feb. 18, 1977.

Rodman Ward, Jr., James L. Holzman, and John H. Small, of Prickett, Ward, Burt & Sanders, Wilmington, and Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel, for defendant below, appellant.

S. Samuel Arsht, Lewis S. Black, Jr., Lawrence C. Ashby, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice.

This appeal requires construction of the following underlined provisions of the recently amended Delaware Corporation Law pertaining to tender offers, 8 *Del.C.* § 203:

"§ 203. *Tender Offers.*

"(a) No offeror shall make a tender offer unless:

"(1) Not less than 20 nor more than 60 days before the date the tender offer is to be made, the offeror shall deliver to the corporation whose equity securities are to be subject to the tender offer, at its registered office in this State or at its principal place of business, a written statement of the offeror's intention to make the tender offer. The statement shall include the name and address of the offeror and of each director and principal officer of the offeror; a description of the equity securities to be purchased and the consideration to be offered; the duration of the offer; *the date on which the offeror may first purchase tendered securities;* the amount or number of equity securities to be purchased or the manner in which such number or amount will be determined; whether the offeror will unconditionally accept all or any part of the equity securities tendered and, if not, upon what conditions acceptance will be made; the number or amount of any equity securities of the corporation owned beneficially by the offeror and any associate of the offeror as of the date of the delivery of the statement; a description of any contract, agreement or understanding to which the offeror or any associate of the offeror is a party with respect to the ownership, voting rights or any other interest in any equity security of the corporation; *and, if the offeror permits the purchase of less than all the outstanding equity securities issued by the corporation, copies of a balance sheet of the offeror as of the end of its last fiscal year and of its income statements for the 3 fiscal years preceding the offer."* (effective May 1, 1976)

Monogram Industries, Inc. made a tender offer proposing to purchase from stockholders of Royal Industries, Inc., for cash, up to 3,200,000 shares (approximately 55%) of the common stock of Royal. Both companies are Delaware corporations. Royal brought suit to enjoin Monogram for proceeding with the proposed tender offer, alleging noncompliance by Monogram with the underlined requirements of § 203.

The Court of Chancery held that the consolidated balance sheet and income statements of Monogram and its subsidiary companies, furnished to Royal in connection with the tender offer, did not constitute compliance with the § 203 requirement that the balance sheet and income statements "of the offeror" be furnished; that the "precise financial statements specified in the statute" consisted of the balance sheet and income statements of the "parent-only" type because "the papers specified in the statute are those required to establish the lawfulness of a dividend, the propriety of the purchase or redemption of shares of stock and the establishment of the existence of a surplus"; and the Court of Chancery concluded, therefore, that Monogram

must be restrained from going forward with its tender offer until there was compliance by furnishing such "parent-only" financial documents.

Monogram appealed. Because of the importance of the time element, this Court heard the appeal on an accelerated schedule and concluded that the decision below must be reversed. The result was announced forthwith by entry of an order; this opinion is confirmatory.

## I.

We find ambiguity in the § 203 language here in question.

■ Under the uncontradicted expert testimony in the record before us, a "balance sheet on the consolidated method", as furnished to Royal by Monogram, was the balance sheet "of the offeror" in this case; and "income statements on the consolidated method", as furnished to Royal by Monogram, were the income statement "of the offeror".* It appears from the unrebutted expert evidence in this case that the statutory terms "a balance sheet of the offeror" and "its income statements" are technical accounting terms; and that, in this case, the terms could mean either the "parent-only" balance sheet and income statements of Monogram or the consolidated balance sheets and income statements it furnished. We think it reasonable to assume that it was the legislative intent to ascribe to the statutory language the alternative meaning the accounting profession has attributed to it.

We held, therefore, that the consolidated balance sheets and income statements of Monogram and its subsidiary companies, as

furnished to Royal in this case, constituted compliance with § 203; that, accordingly, the decision below must be reversed and the cause remanded for further proceedings.

## II.

Royal also asserted Monogram's non-compliance with the requirement of § 203 first underlined above. Monogram purported to comply therewith by including the following in its tender offer statement:

> "2. *Purchase; Payment of Purchase Price; Tax Consequences.* Upon the terms and subject to the conditions of the Offer, the purchase of and payment for all Shares duly tendered prior to 10:00 A.M., New York City time, on December 2, 1976, will be made by the Purchaser as soon as practicable after that time * * * ."

The attack was upon the phrase "as soon as practicable after that time".

■ We find Royal's position to be hypertechnical and without reasonable basis. Strict compliance with the statutory requirement, without the protective phrase, should have been possible and would have been preferable; but no valid reason was brought to our attention for holding that the language adopted by Monogram was unduly prejudicial to Royal or its stockholders or violative of the policy of the Statute. This objection seems based more upon target-company defense tactics than sound principles of statutory construction.

Accordingly, we held that there was sufficient compliance by Monogram in this respect.

\* \* \*

Reversed.

---

* The Standards of the American Institute of Certified Public Accountants, Section 2051.02, in evidence in this case, state the following:

"PURPOSE OF CONSOLIDATED STATEMENTS

"1. The purpose of consolidated statements is to present, primarily for the benefit of the shareholders and creditors of the parent company, the results of operations and the financial position of a parent company and its subsidiaries essentially as if the group were a single company with one or more branches or divisions. There is a presumption that consolidated statements are more meaningful than separate statements and that they are usually necessary for a fair presentation when one of the companies in the group directly or indirectly has a controlling financial interest in the other companies."