**GM SUB CORPORATION, Defendant, Appellant,**

v.

**LIGGETT GROUP INC., Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted April 28, 1980.

Decided April 30, 1980.

R. Franklin Balotti (argued), Wendell Fenton and Donald A. Bussard of Richards, Layton & Finger, Wilmington and John L. Warden, D. Stuart Meiklejohn and Garrard R. Beeney of Sullivan & Cromwell, New York City, of counsel; for defendant-appellant.

Rodman Ward, Jr. (argued), Edward P. Welch and Carolyn Berger, Wilmington and Stuart L. Shapiro of Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff-appellee.

John X. Denney, Jr., Asst. U.S. Atty., Robert C. Pozen, Associate Gen. Counsel, Stephen P. Lamb, Sp. Counsel, Washington, D.C. (argued); James J. Junewicz and David C. Wilson, New York City and Paul Gonson, Sol., Washington, D.C., and of counsel, for the Securities and Exchange Commission, amicus curiae.

Before DUFFY, QUILLEN and HORSEY, JJ.

DUFFY, Justice.

The crucial issue submitted in this appeal involves the relationship between the Delaware Tender Offer Statute and a Rule of the Securities and Exchange Commission governing tender offers.[1] We emphasize at the beginning of this opinion that the relationship is considered only in the context of the present controversy, which has been heard on an accelerated basis.

I

The Liggett Group Inc. (Liggett), plaintiff, is a Delaware corporation and the target of a tender offer by GM Sub Corporation (GM Sub), defendant, which is also a Delaware corporation. Grand Metropolitan Limited (Grand Met) is a company incorporated under the laws of England and controls GM Sub. Grand Met was named as a defendant but was not served and has not appeared in the action. For present purposes, however, we do not distinguish between Grand Met and GM Sub.

Beginning about June 1979 Grand Met began buying Liggett stock and, by March 1980, had acquired approximately 9.5% of its outstanding shares. On March 21, 1980 Grand Met filed with the Securities and Exchange Commission a Schedule 13 D Disclosure Statement (required of a shareholder owning more than 5% of certain shares of stock of a listed corporation) reporting its holdings in Liggett and stating that the shares were purchased for investment, and that it did not have a present intention to seek control of the company. It is fair to say that the Liggett management did not regard Grand Met's interest in its corporate affairs with any enthusiasm, at least recently.[2]

Grand Met incorporated GM Sub as a wholly-owned (but indirect) subsidiary and thereafter, on April 14, GM Sub publicly announced its intention to make a cash tender offer for all of the equity securities of Liggett. On the same day, GM Sub filed with the Securities and Exchange Commission an amended Schedule 13 D stating the terms of the proposed offer, and also filed certain disclosure statements with state agencies in New Jersey and North Carolina in purported compliance with their respective Tender Offer Disclosure Statutes. GM Sub also served on Liggett a notice of intention to make a tender offer, in purported compliance with the Delaware Tender Offer Statute, 8 *Del.C.* § 203.

The offer was commenced on April 18 and is addressed, in effect, to some 37,000 shareholders of Liggett. The offer led to open warfare between the Liggett management and Grand Met, resulting in additional lawsuits in New Jersey, South Carolina and Delaware. We will refer to the litigation in other States only to the extent necessary in disposing of this appeal.[3] Our responsibili-

1. By permission of the Court, the Securities and Exchange Commission is an *amicus curiae* in the appeal and Commission counsel have briefed and orally argued the validity and effect of its Rule.

2. Litigation concerning the Grand Met and GM Sub acquisition of Liggett stock began in North Carolina: On March 23, an action was brought by the Secretary of State of North Carolina (with Liggett joining as an intervening plaintiff)

charging Grand Met and GM Sub with violation of the State Tender Offer Statute. On April 1, a preliminary injunction was issued prohibiting Grand Met and GM Sub from acquiring additional shares of Liggett pending a final adjudication of the action.

3. On April 14, Grand Met and GM Sub filed a complaint in the United States District Court for the District of New Jersey against Liggett and others for an order declaring that both 8

ty, of course, centers on the Delaware action.

On April 16, two days after GM Sub had announced its intention to make the tender offer, Liggett filed this suit in the Court of Chancery. On April 21, after hearing on cross applications of the parties, for a temporary restraining order and stay of the action, the Vice Chancellor entered an order temporarily restraining GM Sub from proceeding further with the tender offer until expiration of the twenty-day waiting period required by § 203. That statute reads in part as follows:

"(a) No offerer shall make a tender offer unless:

(1) Not less than 20 nor more than 60 days before the date the tender offer is to be made, the offeror shall deliver to the corporation whose equity securities are to be subject to the tender offer, at its registered office in this State or at its principal place of business, a written statement of the offeror's intention to make the tender offer. The statement shall include the name and address of the offeror and of each director and principal officer of the offerors; a description of the equity securities to be purchased and the consideration to be offered; the duration of the offer; the date on which the offeror may first purchase tendered securities; the amount or number of equity securities to be purchased or the manner in which such number or amount will be determined; whether the offeror will unconditionally accept all or any part of the equity securities tendered and, if not, upon what conditions acceptance will be made; the number or amount of any equity securities of the corporation owned beneficially by the offeror and any associate of the offeror as of the date of the delivery of the statement; a description of any contract, agreement or understanding to which the offeror or any associate of the offeror is a party with respect to the ownership, voting rights or any other interest in any equity security of the corporation; and, if the offeror permits the purchase of less than all the outstanding equity securities issued by the corporation, copies of a balance sheet of the offeror as of the end of its last fiscal year and of its income statements for the 3 fiscal years preceding the offer;

"(2) The tender offer shall remain open for a period of at least 20 days after it is first made to the holders of the equity securities, during which period any stockholder may withdraw any of the equity securities tendered to the offeror, and any revised or amended tender offer which changes the amount or type of consideration offered or the number of equity securities for which the offer is made shall remain open for an additional period of at least 10 days following the amendment;"

Cf. *Monogram Industries v. Royal Industries*, Del.Supr., 372 A.2d 171 (1977).

The Trial Judge denied GM Sub's motion to stay the Delaware action although the Federal action in New Jersey was prior in time; he did, however, on GM Sub's application and over Liggett's objection, enter an order making what had been a temporary order a final judgment enjoining GM Sub from pursuing the tender offer in violation of the waiting period required by § 203. This appeal followed.

\* \* \* \* \* \*

Before discussing the issues and arguments in the appeal, it is important to relate the somewhat unusual procedural context of the case, both in this Court and in the Court of Chancery.

*Del.C.* § 203 and the New Jersey Bid Disclosure Act are unconstitutional and to enjoin Liggett from litigating the tender offer in any other forum.

The Securities Commissioner of South Carolina filed a complaint in the Court of Common Pleas of that State (Richland County) against Grand Met and GM Sub to enjoin them from proceeding with a tender offer before complying with the South Carolina Tender Offer Disclosure Act.

The order of the Vice Chancellor temporarily restraining GM Sub from proceeding with the tender offer also permitted discovery on an expedited basis and calendared a preliminary injunction hearing four days later, that is, on April 25. The day after that order was entered, on April 22, the Court entered a final judgment against GM Sub. As we have already noted, that was done over Liggett's objection. In announcing his ruling, the Trial Judge said, in part:

"In short, I have difficulty in compelling a defendant to go to trial on the merits when it is pleading to have judgment entered against it for the full relief sought by the complaint as the result of a preliminary ruling made by the Court based upon a summary of the facts and merits presented by counsel during argument. It may be that the limitations of the record will work against the possible success of GM Sub on appeal. But this, I think, is the problem of GM Sub. It is apparently a risk that it is willing to assume in its effort to obtain appellate review before the passage of time renders the issue moot.

"Having considered the matter, I conclude that final judgment will be entered against GM Sub as requested."

The final judgment of the Court provides in part that:

"1. GM, its officers, directors, employees, servants, attorneys, agents, and those acting on its behalf or in concert therewith, are hereby enjoined from making or continuing to make a tender offer or from disseminating any offering material with regard to a tender offer for any or all securities of Liggett Group Inc. ('Liggett'), and from receiving tenders therefor or from accepting or paying for all such securities heretofore tendered, and from proceeding any further with such offer.

"2. The injunction issued in foregoing paragraph 1 shall continue in effect until 5:00 p. m., EDST, on the 20th day after the delivery of notice by GM Sub to Liggett as mandated by 8 *Del.C.* § 203 (delivery of a notice purporting to comply with the said statute having already been made), at which time the said injunction shall automatically be vacated and dissolved without further order of the Court."

We were advised at oral argument that May 5 is (at the outside) the "20th day" referred to in the order and, apparently, the injunction will terminate on that date.

## II

We first consider GM Sub's argument that the Court of Chancery should have stayed this action because the same issues, involving the same parties, were already in litigation in the Federal Court in New Jersey. That decision is governed by the broad discretion of the Trial Judge and the standard of review is whether abuse thereof has been shown. Cf. *Coaxial Communications v. CNA Financial Corp.*, Del.Supr., 367 A.2d 994 (1979).

■ We conclude that the Court did not abuse its discretion in denying the motion to stay the Delaware action in favor of the suit in the Federal District Court. Time was of the essence and the temporary relief sought by Liggett was subject to modification, as the Court deemed appropriate, in light of developments. Indeed, the District Court by denying GM Sub's application for preliminary relief (on the same day as the Court of Chancery entered the temporary restraining order), in effect, invited State courts to deal with State laws. The District Court said:

"The public interest, too, is that the applicable state laws be complied with, if valid, not that suits to enforce them be brought in this Court which may lack the power to deal with the question."

Viewing the full record in retrospect, the principles announced in *McWane Cast Iron Pipe Corporation v. McDowell-Wellman Engineering Company*, Del.Supr., 263 A.2d 281 (1970), do not require that a stay be granted. In short, the Vice Chancellor did not abuse his discretion in refusing to order that this action abate in deference to the Federal suit in New Jersey.

### III

Liggett has filed three threshold motions, all of which we have considered and all of which will be denied. The first is a motion to strike the *amicus curiae* brief of the Securities and Exchange Commission on the ground that it will not assist the Court in determining the appeal; the second is a motion under Rule 25(a) to affirm the judgment of the Trial Court; and the third is a motion to dismiss or remand the appeal.

The *amicus* brief filed by the SEC discusses its rule-making power and the governing Federal Statute; it addresses the legal and factual issues in a way that assists the Court in the appeal and, therefore, it should be (and has been) considered. As to the motion to affirm, the presumed constitutionality of § 203, in the context of recently promulgated Rule 14d–2 of the SEC (discussed in more detail hereafter) is not clearly controlled by settled Delaware law. In addition, the Court of Chancery (by express design) entered a final order on the basis of the temporary restraining order; thus, on its face, there is a final judgment which cannot be summarily affirmed under standards of review relating solely to temporary restraining orders.

Liggett's motion to dismiss or remand is based on the proposition that GM Sub Corporation is appealing from an order which is really temporary and interlocutory. We agree that the Trial Judge's initial order was a temporary restraining order and nothing more, but we cannot ignore the fact that he made the judgment final and thus ended the litigation in his Court. Clearly, then, that order is appealable and GM Sub has a right to be here.

### IV

We turn now to the critical issue which has been argued, that is, the relationship between § 203 and Rule 14d–2 of the Securities and Exchange Commission, which became effective January 7, 1980. In adopting the Rule, the Commission relied on its general rule-making authority under the Securities Exchange Act of 1934 and the Williams Act, in particular. See 15 *U.S.C.*

78a *et seq.* Rule 14d–2 is part of comprehensive regulations governing the conduct of tender offers which are subject to Federal law.

Briefly, Rule 14d–2 provides that a cash tender offer is deemed to commence for purposes of Federal law when a public announcement is made of the material terms thereof—subject to a five-day "grace period" after such an announcement during which the bidder must either proceed with the tender offer and file certain information with the Commission and disseminate relevant information to the security holders, or it must withdraw the offer.

The Federal regulatory plan thus differs from, if it does not conflict with, § 203: Rule 14d–2 requires that a tender offer not withdrawn commence within five days of a public announcement thereof and continue for at least twenty business days; whereas the Delaware Statute requires not less than a twenty-day delay between delivery of a notice of intention to make a tender offer and commencement of the offer.

With that brief comparison of the Statute and the Rule, we now consider how those governing standards are to be applied to the litigating parties. In so doing, we again emphasize the procedural context in which the issues are raised.

Turning first to the entry of final judgment on April 22, as we view the case, GM Sub must rely on the proposition that there is not a genuine issue of fact and that it was entitled to judgment as a matter of law. In requesting the Court of Chancery to enter a final judgment against itself, GM Sub (having made its intentions clear) is not precluded from appealing therefrom, but it can finally prevail only if it is entitled to judgment on the record as a matter of law—that is, as if it had requested summary judgment in its favor.

In this regard, it is important to note that GM Sub has not argued in the appeal that § 203 is unconstitutional or invalid on its face. Rather, the contention is that Delaware law is in conflict with Federal law (that is, Rule 14d–2), *as applied to this offer.* But that contention is factual and requires a supplemental record and an evi-

dentiary hearing, unless a conflict between Federal and Delaware law is inevitable under any reasonably possible state of facts.

To quote from GM Sub's brief,

". . . Rule 14d–2(b) promulgated by the SEC under the Exchange Act, requires that an offeror commence a tender offer within five business days of its public announcement of the name of the company whose shares are to be acquired, the number of shares to be purchased and the consideration offered."

Thus GM Sub contends that, if it was required to make a "public announcement," it could not possibly comply with both the twenty-day waiting period after notice to the target company and the five-day requirement of Federal law reflected in Rule 14d–2(b). Such irreconcilable conflict, GM Sub asserts, must be resolved in favor of Federal law under the Supremacy Clause (Article VI, Section 2) of the United States Constitution.

To particularize, GM Sub argues that it was compelled by a North Carolina injunctive order to make a public announcement of the tender offer. Without an in-depth discussion of that proceeding in another State court, it is sufficient to say, that, in light of the contempt proceedings against GM Sub in North Carolina for violating the preliminary injunction, we conclude that it is not possible to rule as a matter of law, that GM Sub was compelled by the North Carolina order to make a public announcement of its intention to make the tender offer. To put it a different way, on the present state of affairs, we cannot deny Liggett an opportunity to make a factual record as to what GM Sub was required to announce in North Carolina.

Similarly, we decline to rule (as GM Sub argues) that, as a matter of law, the normal factual consequences of a rule of the New York Stock Exchange would, after notification to a target company pursuant to Delaware law, in effect, override a modest waiting period under our State Statute and require announcement of the tender offer and opening thereof under Federal law.

Neither of these reasons asserted by GM Sub persuade us to order an outright reversal of the final judgment entered by the Court of Chancery.

If a final judgment can be considered on the present record, it must rest on an inevitable conflict between Federal and Delaware law. And as to that, Liggett argues that SEC Rule 14d–2(b) is "of questionable validity." We cannot say that such argument is wholly without merit, as a matter of law and, in any event, Liggett is entitled to make a record on its point.

We will not reverse the Court of Chancery for the purpose of entering a final judgment for GM Sub and it necessarily follows, under the circumstances to which we have referred, that Liggett is not entitled to a final judgment because there are unresolved issues of fact. Liggett, as we understand it, while not adverse to a summary affirmance, basically agrees that the case needs a factual record. Accordingly, the final judgment entered must be reversed and the matter remanded for further proceedings.

## V

█ Finally, we consider the entry of the temporary restraining order in Liggett's favor. It is argued by GM Sub that the Vice Chancellor abused his discretion by entering that order, primarily because he failed to give the same presumptive effect to Federal law that he had given to Delaware law. That is significant, GM Sub says, because Federal law required prompt public disclosure of its intention to make the offer through an amendment to the Schedule 13 D, which it had filed with the SEC, and such an amendment would constitute a public announcement under Rule 14d–2, thus triggering the five-day requirement.

Assuming that an interlocutory appeal of a temporary restraining order is reviewable at all, the test certainly would be whether the Vice Chancellor abused his discretion in entering it. Given the circumstances under which the order was issued in this case, we cannot conclude that there was an abuse of discretion.

The Court held a hearing early on a Monday morning in an effort to determine if temporary status quo relief was desirable

while the Court proceedings were pending. The Delaware Statute was presumptively constitutional, cf. *Justice v. Gatchell*, Del. Supr., 325 A.2d 97 (1974), and a recent decision of the Court of Chancery in *Wylain, Inc. v. Tre Corporation*, Del.Ch., 412 A.2d 338 (1980), had determined that it was. A facial conflict between Federal and Delaware law was not relied upon. Indeed, the very suggestion of irreconcilable conflict "as applied" pointed to the need to develop a factual record. The Vice Chancellor merely said to GM Sub that:

> ". . . I'm swayed at this point by the fact that your position is not that Section 203 is, or that the 20-day requirement in it is unconstitutional because of a reconcilable [sic] conflict with the Securities & Exchange regulations, but simply as you candidly point out, because of the factual situation in which Grand Met finds itself, that there is a conflict that means that the state statute must yield. That seems to me to maybe get into some obligation on your part to show how it came about."

We conclude that the Vice Chancellor did not abuse its discretion in entering the temporary restraining order.

But to say that is not to say that interim injunctive relief should be continued. On the contrary, the development of the Federal *vis-a-vis* State issue in this Court persuades us that it should not be. While we recognize that Liggett did not have an opportunity to develop its record, we nonetheless have the case on appeal from a final judgment. The full case, developed more thoroughly than at the time of the hearing on the temporary restraining order, is now before us, 10 *Del.C.* § 144. That, plus the fact that waiting-period cases are likely to be shortlived and without appropriate review because of mootness, requires a broader review than that which is normally given to preliminary relief.

As we have noted, there is an arguable conflict between the Rule and the Statute when the respective time periods are applied here. Liggett attacks the Rule but, for present purposes, at least, we are persuaded that we should accord it a presumption of validity, that is, it has the force and effect of law. Compare *Griffin v. Harris*, 3 Cir., 571 F.2d 767, 772 (1978). When that is done, principles of Federal supremacy, *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), tip the scales against the continuation of interim injunctive relief which would, in effect, preclude GM Sub from complying with Rule 14d-2.[4] To put it in factual and procedural terms, once it is established that GM Sub has amended its Schedule 13D and thus made a public announcement under Federal law, a conflict exists. Thereafter, the burden should be on Liggett to negate the effect of the conflict. In our judgment, it has not done so on the present record and is not entitled to restrain GM Sub from complying with Federal law.

If the case continues, all parties will have an opportunity to develop their respective factual records on the accommodation between the Federal Rule and the Delaware Statute. And as to that, see *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979), in which the Supreme Court of the United States said that Section 28 of the Securities Exchange Act of 1934 "was plainly intended to protect, rather than limit, state authority." We emphasize that we make no judgments on the law as related to the factual contentions in this case.

Upon remand Liggett will have an opportunity to show, as it argues in this Court,

---

4. The Superior Court of North Carolina, in the companion litigation, made the following ruling:

> "The Court holds as a matter of law that the 30-day period of time for the commencement of a tender offer prescribed in NCGS 78b–4(a) is in direct conflict with the Federal Rule of five days promulgated by the Securities and Exchange Act of 1934 to wit; Rule 14d–2(b). Compliance with both the Federal and State regulations at the same time in the same way and in the same manner is a physical impossibility. The Federal Rule is overriding and pre-emptive. The 30-day provision of NCGS 78B–4 is not enforceable."

that enactment of Rule 14d–2 exceeded the SEC's authority under the governing Statute, that GM Sub had an opportunity to proceed with its tender offer in such a way as to comply with both the SEC Rule and § 203 and that any conflict between them was one of GM Sub's own making. If the case proceeds, final judgment, of course, must await a determination of those and other issues.

  *  *  *  *  *  *

Because of the time limitations involved in the controversy, the mandate shall issue forthwith.

  *  *  *  *  *  *

Reversed and remanded for proceedings consistent herewith.