**LORAL CORPORATION, a New York corporation, and LC Acquiring Corp., a Delaware corporation, Plaintiffs,**

v.

**SANDERS ASSOCIATES, INC., a Delaware corporation, and Charles M. Oberly, III, Attorney General of the State of Delaware, Defendants.**

Civ. A. No. 86–296 MMS.

United States District Court,
D. Delaware.

July 8, 1986.

Thomas Reed Hunt, Jr., and Kenneth J. Nachbar, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiffs Loral Corp. and LC Acquiring Corp.

Donald L. Bruton, Securities Com'r, Office of the Atty. Gen., Wilmington, Del., for defendant Charles M. Oberly, III.

John Hall, of Debevoise & Plimpton, New York City, for defendant Sanders Associates, Inc.

OPINION ON STIPULATION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiffs in this takeover litigation, Loral Corporation ("Loral") and LC Acquiring

Corporation ("LC"), seek to purchase ten million shares of the outstanding common stock of defendant Sanders Associates, Inc. ("Sanders"). Plaintiffs moved for a temporary restraining order enjoining Sanders and defendant Charles M. Oberly, Attorney General of the State of Delaware, from seeking to enforce against them the Delaware Tender Offer Act, 8 Del.C.Ann. § 203 (1983).[1] Plaintiffs did not, however, request a hearing on the motion. Two days later, the parties filed with the Court a stipulation and proposed order specifying that neither Sanders nor the Attorney General will seek to enforce Section 203 against the offer without advance notice. In addition, the stipulation provides that neither defendant will commence proceedings in any other court that would require litigation, by way of claims, defenses, or counterclaims, based upon Section 203. For the reasons that follow, the Court will not sign the proposed order.

## BACKGROUND

Section 203 requires an offeror to give the target timely notice of its intent to make a tender offer, and to provide specified information about itself and the offer. The purpose of this requirement is to ensure management has enough time and information to evaluate the offer and provide the shareholders with its perspective, thus enabling them to make an informed decision as to whether to accept the offer. *American Medicorp, Inc. v. Humana, Inc.*, 381 A.2d 571, 572 (Del.Ch.1977). In addition, Section 203 requires tender offers to remain open for at least twenty days (and at least ten days after any amendment) and imposes upon offerors certain proration requirements. The statute vests the Delaware Court of Chancery with exclusive jurisdiction summarily to hear and determine alleged violations of Section 203. 8 Del.C.Ann. § 203(e).

1. Section 203 provides, in part:

(a) No offeror shall make a tender offer unless:

(1) Not less than 20 nor more than 60 days before the date the tender offer is to be made, the offeror shall deliver personally or by registered or certified mail to the corporation whose equity securities are to be subject to the tender offer, at its registered office in this State or at its principal place of business, a written statement of the offeror's intention to make the tender offer. The statement shall include the name and address of the offeror and of each director and principal officer of the offeror; a description of the equity securities to be purchased and the consideration to be offered; the duration of the offer; the date on which the offeror may first purchase tendered securities; the amount or number of equity securities to be purchased or the manner in which such number or amount will be determined; whether the offeror will unconditionally accept all or any part of the equity securities tendered and, if not, upon what conditions acceptance will be made; the number or amount of any equity securities of the corporation owned beneficially by the offeror and any associate of the offeror as of the date of the delivery of the statement; a description of any contract, agreement or understanding to which the offeror or any associate of the offeror is a party with respect to the ownership, voting rights or any other interest in any equity security of the corporation; and, if the offeror permits the purchase of less than all

the outstanding equity securities issued by the corporation, copies of a balance sheet of the offeror as of the end of its last fiscal year and of its income statements for the 3 fiscal years preceding the offer;

(2) The tender offer shall remain open for a period of at least 20 days after it is first made to the holders of the equity securities, during which period any stockholder may withdraw any of the equity securities tendered to the offeror, and any revised or amended tender offer which changes the amount or type of consideration offered or the number of equity securities for which the offer is made shall remain open at least 10 days following the amendment; and

(3) The offeror and any associate of the offeror will not purchase or pay for any tendered equity security for a period of at least 20 days after the tender offer is first made to the holders of the equity securities, and no such purchase or payment shall be made within 10 days after an amended or revised tender offer if the amendment or revision changes the amount or type of consideration offered or the number of equity securities for which the offer is made. If during the period the tender offer must remain open pursuant to this section, a greater number of equity securities is tendered than the offeror is bound and willing to purchase, the equity securities shall be purchased pro rata, as nearly as may be, according to the number of shares tendered during such period by each equity security holder.

Section 203 survived a commerce clause and supremacy clause challenge in Chancery Court in 1979. *See Wylain, Inc. v. TRE Corp.*, 412 A.2d 338 (Del.Ch.1979);[2] *see also GM Sub Corp. v. Liggett Group Inc.*, 415 A.2d 473 (Del.1980) (unwilling to hold as matter of law that § 203 violates supremacy clause). Since the decision of the Third Circuit Court of Appeals in *Kennecott Corp. v. Smith*, 637 F.2d 181 (3d Cir.1980) (supremacy clause), and the Supreme Court in *Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) (commerce clause), however, it has been clear that Section 203 is unconstitutional on both grounds.[3]

As a consequence, this Court has regularly and routinely enjoined enforcement of Section 203 by the target and the state Attorney General—at least 45 times since the start of 1982. *See Mesa Partners v. Phillips Petroleum Co.*, 488 A.2d 107, 108 (Del.Ch.1984) (action to restrain enforcement "a rite of passage in tender offer litigation in this jurisdiction"). No useful purpose would be served by citing to all of the numerous instances in which a hostile tender offeror has sought a temporary restraining order to enjoin enforcement of Section 203.[4] Neither the Attorney General nor the various target defendants have, to the best of my recollection, in recent years sought to oppose a Section 203 temporary restraining order.[5] After that order is granted, parties typically stipulate that neither enforcement of Section 203 nor a preliminary injunction against its enforcement will be sought. *See, e.g., Joseph E. Seagram & Sons, Inc.*, 519 F.Supp. 506, 507 (D.Del.1981) (enforcement); *Burroughs Corp. v. Sperry Corp.*, No. 86–205 (MMS) (D.Del. May 13, 1986) (Dkt. 9) (enforcement and injunction). In fact, what appears to be a standardized form of stipulation is now employed for this purpose.

In the present litigation, the pro-forma temporary restraining order has not seriously been sought and the parties have

**2.** In *Wylain,* the offeror did not comply with Section 203 and the target sought a preliminary injunction prohibiting further action by the defendant in connection with the offer. The Chancery Court granted the relief requested, holding the defendant did not sustain its burden of showing Section 203 is clearly unconstitutional. *Id.* at 349.

**3.** A third ground recited for enjoining enforcement is 42 U.S.C. § 1983, under which one acting under color of state law to deprive another of constitutional rights is liable to that person for redress. This derivative ground rests on the commerce clause and supremacy clause bases.

**4.** A sampling is as follows: *Burroughs Corp. v. Sperry Corp.*, No. 86–205 (MMS) (D.Del. May 8, 1986; *Wickes Cos. v. Nat'l Gypsum Co.*, No. 86–153 (LON) (D.Del. Apr. 9, 1986); *Northeast Savings, F.A. v. Westchester Financial Services Corp.*, No. 86–82 (JJF) (D.Del. Feb. 21, 1986); *Mark IV Holdings, Inc. v. Gulton Industries,* No. 86–39 (JRR) (D.Del. Jan. 30, 1986); *Coach Acquisition, Inc. v. MidCon Corp.*, No. 85–727 (MMS) (D.Del. Dec. 16, 1985); *Newell Co. v. Wm. E. Wright Co.*, No. 85–605 (LON) (D.Del. Oct. 18, 1985); *Shamrock Acquisition Corp. v. Horizon Corp.*, No. 85–588 (JFF) (D.Del. Oct. 7, 1985); *Colorado Interstate Corp. v. Amer. Natural Resources Co.*, No. 85–153 (CMW) (D.Del. Mar. 4, 1985); *Icahn Group Inc. v. Phillips Petroleum Co.*, No. 85–99 (JLL) (D.Del. Feb. 12, 1985); *Mesa Partners v. Phillips Petroleum Co.*, No. 84–718 (LON) (D.Del. Dec. 4, 1984); *Shamrock Associates v. Dorsey Corp.*, No. 84–611 (JLL) (D.Del. Oct. 19, 1984); *Combustion Engineering, Inc. v. Impell Corp.*, No. 84–136 (MMS) (D.Del. Mar. 16, 1984); *Mesa Petroleum Co. v. Gulf Corp.*, No. 84–98 (WKS) (D.Del. Feb. 22, 1984); *Pennzoil Co. v. Getty Oil Co.*, No. 83–879 (JLL) (D.Del. Dec. 28, 1983); *Manor Care, Inc. v. Anta Corp.*, No. 83–820 (WKS) (D.Del. Nov. 21, 1983); *Colorado Interstate Corp. v. Texas Gas Resources Corp.*, No. 83–343 (MMS) (D.Del. June 6, 1983); *United Technologies Corp. v. Bendix Corp.*, No. 82–602 (CMW) (D.Del. Sept. 7, 1982); *Martin Marietta Corp. v. Bendix Corp.*, No. 82–587 (JLL) (D.Del. Aug. 30, 1982); *Cities Service Co. v. Mesa Petroleum Co.*, No. 82–317 (WKS) (D.Del. May 28, 1982); *Whittaker Corp. v. Brunswick Corp.*, No. 82–37 (MMS) (D.Del. Jan. 25, 1982).

**5.** In *Burlington Northern Inc. v. El Paso Co.*, No. 82–818 (WKS) (D.Del. Dec. 28, 1982), following entry of the temporary restraining order, the target did argue that a preliminary injunction should not follow with regard to the proration requirements of Section 203(a)(3) and that the offeror should be ordered to comply with those requirements. Judge Stapleton rejected the target's arguments and enjoined it from taking any action to enforce Section 203 that would delay continuation or completion of the offer or interfere with its timing. An appeal was filed with but never decided by the Third Circuit Court of Appeals.

proceeded straight to the stipulation stage.[6] Had plaintiffs sought a temporary restraining order, the Court could not have found that the plaintiffs would have been irreparably injured *pendente lite* if relief were not granted, given the present unanimity of opinion and wealth of precedent that Section 203 is unconstitutional; therefore, the motion would have been denied.[7] The parties' request that the Court sign their stipulation and proposed order must be rejected for the same reason: the order is wholly unnecessary.

## DISCUSSION

Actual enforcement of Section 203 could indeed cause plaintiffs irreparable injury. The extended waiting period would impose unnecessary transaction costs and/or opportunity costs on the offeror; delay in and of itself would constitute irreparable injury. *See Kennecott*, 637 F.2d at 188–90; *see also MITE*, 457 U.S. at 645, 102 S.Ct. at 2642.

Plaintiffs have failed, however, to demonstrate any likelihood that Section 203 actually will be enforced against them absent injunctive relief by this Court. Without that showing, there is simply no need to sign the proposed order. An unbroken string of previous Section 203 actions dictates the conclusion that the possibility of enforcement is remote at best. Targets

and the Attorney General no longer contend Section 203 is constitutional or otherwise oppose actions to restrain its enforcement. In the present case, the express stipulation by the defendants indicates they are not interested in bringing a doomed enforcement action.

A recent Section 203 proceeding before Judge Farnan of this Court is illuminating with regard to the role of the Attorney General. *See* Transcript of hearing (Dkt. 8), *Citicorp v. Quotron Systems, Inc.*, No. 86–228 (JJF) (D.Del. May 22, 1986). The state Securities Commissioner, representing the defendant state Attorney General at the hearing, indicated the Attorney General took "no position" on motions to restrain enforcement of Section 203. *Id.* at 4. The Commissioner conceded the unconstitutionality of Section 203 at least with respect to reporting companies, stated he could not envision an effort by the Attorney General to enforce the statute, and apologized to the Court "for the repetitive type of this almost meaningless charade...." *Id.* at 6–9.[8]

The threat of enforcement action by the target corporation is more plausible, but ultimately no more compelling. In this case, as in the more typical temporary restraining order context, plaintiffs have presented no specific allegations that the

---

6. Plaintiffs filed a verified complaint and motion for a temporary restraining order on July 1, 1986, but did not request a hearing on the motion. The parties submitted the stipulation and proposed order, dated July 1, 1986, on July 3, 1986.

7. The standard for preliminary injunctive relief is well-established:
   [T]his Court has consistently identified four factors which must be examined in ascertaining the propriety of a preliminary injunction: ... the moving party must generally show (1) a reasonable probability of eventual success in the litigation and (2) *that the movant will be irreparably injured pendente lite if relief is not granted* .... Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." ...

While these factors structure the inquiry, however, no one aspect will necessarily determine its outcome. Rather, proper judgment entails a "delicate balancing" of all elements. *Eli Lilly & Co. v. Premo Pharm. Labs.*, 630 F.2d 120, 136 (3d Cir.1980) (quoting *Constructors Ass'n v. Kreps*, 573 F.2d 811, 814–15 (3d Cir. 1978)), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980) (emphasis added). A temporary restraining order, rather than a preliminary injunction, is sought when the applicant faces a possibility that irreparable injury will occur before the preliminary injunction hearing can be held. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2951 at p. 498 (1973).

8. The next day, the offeror notified the Court that it had entered into a stipulation with the target regarding the enforcement of Section 203 and that it was therefore withdrawing its application for any injunctive relief.

target will seek to enforce Section 203. Rather, plaintiffs state "[o]n information and belief, Sanders may seek to oppose the Tender Offer by all available means, including seeking the enforcement of Section 203 against the Tender Offer." Verified Complaint (Dkt. 1) at ¶ 2.

This allegation is far more theoretical than real. The stipulation, dated the same day plaintiffs filed their verified complaint and motion for a temporary restraining order, avers that "neither Sanders nor the Attorney General has any present intention to seek to enforce Section 203...." Stipulation (Dkt. 7) at 1.[9] In requesting a court order, it is implied that an attorney specializing in corporate litigation would file a Section 203 enforcement action on behalf of the target well knowing the statute consistently has been declared unconstitutional. I have seen nothing that would warrant the belief that the corporate litigation bar would stoop to this sanctionable tactic. Finally, even if an enforcement action were filed in another jurisdiction, it is far more probable than not that temporary injunctive relief would be denied and the action would not survive a motion to dismiss. *See MITE*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269; *Kennecott*, 637 F.2d 181; cases cited *supra* note 4.

The public is disserved by the perpetuation of a "meaningless charade" in its federal courthouse, whether the charade is in the form of a formal motion for a temporary restraining order or of a stipulation and order. While the pro-forma nature of these proceedings does not demand a substantial amount of courtroom time or attention by the court and court personnel, the time and energy of all involved are wasted and increasingly limited judicial resources are diverted from their best uses.

9. I was confronted recently with a similar situation in *Macfadden Holdings, Inc. v. John Blair & Co.*, No. 86–264 (MMS) (D.Del. June 10, 1986). Plaintiffs in *Macfadden* on June 10, 1986 filed the standard papers for a court order to restrain enforcement of Section 203. Their verified complaint, upon which their application for a temporary restraining order rested in part, stated, "[o]n information and belief, Blair will seek

## CONCLUSION

Because it is unnecessary, the Court declines to sign the stipulation and proposed order restraining defendant Sanders from enforcing Section 203 of the Delaware General Corporation Law.

to oppose the Offer by all lawful means, including seeking the enforcement of Section 203 against the Offer." Verified Complaint (Dkt. 1) at ¶ 21. The next day, plaintiffs filed a stipulation acknowledging that neither Blair nor the Attorney General had any "present intention" to seek to enforce Section 203. Stipulation and Order (Dkt. 4).